06-0833-cr
USA v. Santos

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: June 2, 2008          Decided: September 2, 2008)

Docket No. 06-0833-cr

-------------------------------------

UNITED STATES OF AMERICA,

Appellee,

- v -

MANUEL SANTOS,

Defendant-Appellant.

-------------------------------------

Before:   McLAUGHLIN, SACK, and LIVINGSTON, Circuit Judges.

Appeal by the defendant Manuel Santos from a judgment of conviction in the United States District Court for the Eastern District of New York (David G. Trager, Judge) for murder while engaging in a drug offense punishable under 21 U.S.C. § 841(b)(1)(A), in violation of 21 U.S.C. § 848(e)(1)(A).  On appeal, the defendant raises questions of statutory interpretation with respect to section 848(e)(1)(A) and argues that the evidence presented was insufficient for conviction.

Affirmed.

CARRIE CAPWELL, Assistant United States Attorney (Benton J. Campbell, United States Attorney for the Eastern District of New York, Jo Ann M. Navickas, Assistant United States Attorney, of counsel), Brooklyn, NY, for Appellee.

PHILIP R. SCHATZ, Wrobel & Schatz LLP, New York, NY, for Appellant.

SACK, Circuit Judge:

Defendant Manuel Santos was convicted, following a jury trial in the United States District Court for the Eastern District of New York (David G. Trager, Judge), of the murders of Wilber Garces and Edgardo Bryan while engaging in a drug offense punishable under 21 U.S.C. § 841(b)(1)(A), in violation of 21 U.S.C. § 848(e)(1)(A), and for possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  He was sentenced principally to two concurrent terms of life imprisonment and a consecutive term of imprisonment of ten years.

On appeal, Santos raises questions of statutory interpretation, and a related challenge to the sufficiency of the evidence pertaining to his drug-related murder conviction under section 848(e)(1)(A).  We are asked to determine: (1) whether section 848(e)(1)(A) requires the government to prove that the defendant was, at the time of the murder, "actively engaged in drug dealing," Appellant's Br. 39; (2) what type of nexus the statute requires between a murder and a drug offense; and, in light of our answers to those questions, (3) whether the evidence adduced at Santos's trial was sufficient to support his conviction.

We conclude that (1) because some drug conspiracies in violation of 21 U.S.C. § 846 are "punishable under" section

2

841(b)(1)(A), criminal liability under section 848(e)(1)(A) requires no active involvement in drug distribution; (2) the nexus between a murder and a drug offense need not be more than the "substantive connection" described in United States v. Desinor, 525 F.3d 193, 202 (2d Cir. 2008); and (3) the evidence adduced at trial that Santos killed Garces and Bryan while engaging in a drug offense punishable under 21 U.S.C. § 841(b)(1)(A) was sufficient for a jury to convict him under 21 U.S.C. § 848(e)(1)(A).  We therefore affirm.

**BACKGROUND**

In setting forth the factual background of this appeal, we view the evidence in the light most favorable to the government, and insofar as we draw inferences, we draw them in the government's favor.  See United States v. Morgan, 385 F.3d 196, 198 (2d Cir. 2004).

Santos's involvement in the murders of thirty-year-old Wilber Garces and fourteen-year-old Edgardo Bryan arose from his acquaintance with Carlos Medina.  Medina was a cooperating witness whose testimony was central to the government's case at trial.  Medina worked for German Dario Polanco, a Colombian drug boss who sold large quantities of cocaine and marijuana.  As Polanco's "enforcer," Medina collected drug debts and committed acts of violence on Polanco's behalf.

In September 2000, Polanco instructed Medina to hire some men to kill "Ronnie" and "El Ranco," two men Polanco blamed for stealing $316,000 in cocaine proceeds from him in 1998.

3

Medina, in turn, hired Alex Core to commit the murders, and Core subsequently enlisted Santos in the effort.

Medina and Santos first met on the morning of the murders, September 26, 2000. According to the testimony of Medina -- the cooperating witness -- Santos "wanted to know everything." Trial Tr. 322, United States v. Santos, No. 01-cr-537 (E.D.N.Y. Nov. 9, 2004). Santos first asked about the "job." Id. at 321. Medina explained that Polanco, whom Medina referred to as his "uncle," was a "traquetero" -- which he said was a "Caribbean" word for a well-connected, heavy-selling drug dealer -- who wanted two men killed for robbing him of $316,000.[1] Id. at 321-22. Santos then asked Medina the price at which he and his "uncle" sold "the kilos" of cocaine, and how much he would be paid for the killings. Id. at 322. Medina told Santos that he and Core had agreed to "$7,500 per head." Id. The trio drove to a parking lot on 102nd Street in Queens so that Medina and Core could point out Ronnie's house to Santos. Santos said, "These motherfuckers are dead with me today." Id. at 339.

That evening, Santos, Medina, and Core returned to the parking lot across from Ronnie's house and waited. Two people exited the house, got into a car in the same parking lot where the trio was waiting, and began to back the car out. Santos

---

[1] A DEA expert witness on wholesale cocaine prices testified that $316,000 would buy ten to eighteen kilograms of cocaine in early 1998, the year of the alleged robbery, and eleven to fifteen kilograms in September 2000, when the killings occurred.

4

maneuvered his vehicle to block its exit.  He and Core jumped out and opened fire.  Garces and Bryan were killed.

The killings were a mistake.  Neither Garces nor Bryan had been Polanco's intended target.

Santos was indicted for the murders.  The indictment charged that Santos,

> while engaging in an offense punishable under
> Section 841(b)(1)(A) of Title 21 of the
> United States Code, to wit: conspiring to
> distribute five kilograms or more of a
> substance containing cocaine, a Schedule II
> controlled substance, in violation of Section
> 846 of Title 21, United States Code, did
> knowingly and intentionally kill, counsel,
> command, induce, procure and cause the
> intentional killings of Wilber Garces [and
> Edgardo Bryan], and such killing[s] did
> result.

Indictment 1-2, United States v. Santos, No. 01-cr-537 (E.D.N.Y. May 18, 2001) (charging violations of 21 U.S.C. § 848(e)(1)(A)).[2]

At Santos's trial, the district court instructed the jury on three elements the government was required to prove beyond a reasonable doubt to convict Santos: (1) that he engaged in a conspiracy to distribute five or more kilograms of cocaine; (2) while engaging in the conspiracy, he knowingly and intentionally killed Garces (Count 1) or Bryan (Count 2) or both; and (3) the killings actually resulted from his actions.  The court also instructed the jury on the elements of conspiracy, noting that "[t]here are various roles members can play in a drug

---

[2] Santos was also charged with a firearms offense related to the killings, see 18 U.S.C. § 924(c)(1)(A)(iii), but that count is a tangential issue on this appeal.

5

conspiracy," including "collecting money owed" and "enforcing drug debts." Trial Tr. 904, United States v. Santos, No. 01-cr-537 (E.D.N.Y. Nov. 19, 2004). And the court instructed the jury that, for a conviction, "the defendant's participation in the killing must be related to the drug conspiracy" and that this condition would be satisfied if there was a "meaningful connection between the defendant's role in the killing and his participation in the drug conspiracy." Id. at 908.

Santos was convicted. He appeals.

**DISCUSSION**

I. Statutory Interpretation

Santos was convicted of violating 21 U.S.C. § 848(e)(1)(A), which requires a term of imprisonment of 20 years to life, and permits the death penalty, for

> any person engaging in or working in
> furtherance of a continuing criminal
> enterprise, or any person engaging in an
> offense punishable under section
> 841(b)(1)(A) of this title or section
> 960(b)(1) of this title who
> intentionally kills or counsels,
> commands, induces, procures, or causes
> the intentional killing of an individual
> and such killing results . . . .

21 U.S.C. § 848(e)(1)(A) (emphasis added). The subject of this appeal is Santos's conviction under the statute's second prong, the drug-related murder provision.

Santos's challenge to his conviction implicates two questions of statutory interpretation, which, as questions of law, we review de novo. See United States v. Gayle, 342 F.3d 89,

6

91 (2d Cir. 2003), cert. denied, 544 U.S. 1026 (2005).  First, what is the scope of the statutory requirement that the defendant was "engaging in an offense punishable under" 21 U.S.C. § 841(b)(1)(A)?  Second, what sort of nexus or connection between the charged drug offense and the charged killing is required for conviction?

A.  "Engaging in an Offense Punishable
    Under Section 841(b)(1)(A)"

Santos argues that, as a matter of law, the government was required to prove that he was "actively engaged in the distribution of drugs."  Appellant's Br. 42.  We disagree.

"Statutory interpretation always begins with the plain language of the statute, assuming the statute is unambiguous."  Universal Church v. Geltzer, 463 F.3d 218, 223 (2d Cir. 2006), cert. denied, 127 S. Ct. 961 (2007).  When a court determines that the language of a statute is unambiguous, its inquiry is complete.  See, e.g., Marvel Characters, Inc. v. Simon, 310 F.3d 280, 290 (2d Cir. 2002).  Thus, although Santos argues that his position is supported by the legislative history of section 848(e)(1)(A) and principles of statutory construction favoring a narrow interpretation of criminal statutes, we need not resort to these modes of interpretation if the plain language of the statute is clear.  See, e.g., Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992); Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 808 n.3 (1989); Cohen v. JP Morgan Chase & Co., 498

7

F.3d 111, 116 (2d Cir. 2007); Gottlieb v. Carnival Corp., 436 F.3d 335, 337-38 (2d Cir. 2006).

Section 848(e)(1)(A), as relevant to this appeal, applies to "any person engaging in an offense punishable under [21 U.S.C. §] 841(b)(1)(A) . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results."  21 U.S.C. § 848(e)(1)(A) (emphasis added).  Section 841(b)(1)(A), referred to in section 848(e)(1)(A), does not itself proscribe specific conduct; it establishes penalties, including imprisonment for ten years to life, for drug offenses involving specific types and quantities of controlled substances.[3]

The penalties set forth in section 841(b) apply not only to those who "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," id. § 841(a)(1), but also to those who "attempt[] or conspire[]" to do so, id. § 846.  See United States v. Richards, 302 F.3d 58, 70 n.8 (2d Cir. 2002).  That is, "[a]ny person who attempts or conspires to commit any offense defined in [21 U.S.C. §§ 801-904] [is] subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  21 U.S.C. § 846.  Therefore, conspiracy to commit a

---

[3] As relevant to this appeal, 21 U.S.C. § 841(b)(1)(A)(ii)(II) provides a mandatory minimum term of imprisonment for drug offenses involving five kilograms or more of cocaine.

8

substantive offense punishable under section 841(b)(1)(A) is itself "an offense punishable under section 841(b)(1)(A)," id. § 848(e)(1)(A).[4]

Consequently, and contrary to Santos's argument, a defendant need not be "actively engaged in the distribution of drugs," Appellant's Br. 42, in order to be convicted under the drug-related murder prong of section 848(e)(1)(A). The defendant need only be engaging in an offense punishable under section 841(b)(1)(A), which includes conspiracy to commit such an offense.

Santos also argues that the drug-related murder prong of section 848(e)(1)(A) does not apply to persons who are doing no more than "working in furtherance of" a drug offense, Appellant's Br. 31; that such a drug offense must be committed "independent of the killing itself," id. at 36; and that it must be "ongoing" when the killing occurs, id. at 35. We may assume

---

[4] Although we have never squarely addressed the question of whether offenses "punishable under" section 841(b)(1)(A) include conspiracies, we have affirmed several convictions under the drug-related murder prong of section 848(e)(1)(A) in which the defendants were charged with engaging in a drug conspiracy, not actively engaging in the distribution of drugs. See United States v. Desinor, 525 F.3d 193, 197 (2d Cir. 2008); United States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008); United States v. Walker, 142 F.3d 103, 113 (2d Cir.), cert. denied, 525 U.S. 896 (1998). Santos has brought to our attention an unpublished decision of the Sixth Circuit stating that the district court "may have been mistaken" in charging the jury that the defendants could be convicted if they "engaged in (or worked in furtherance of) a drug conspiracy," as opposed to engaging in a substantive drug offense. United States v. Robinson, Nos. 94-1538, 94-1727, 1996 WL 506498, at *13, 1996 U.S. App. LEXIS 25346, at *40 (6th Cir. Sept. 5, 1996) (unpublished), cert. denied, 520 U.S. 1181 (1997). We find this brief, unpublished dictum unpersuasive.

9

that these interpretations of the statute are correct. They do not help Santos, however, because the drug conspiracy statute, 21 U.S.C. § 846, does not require proof of an overt act in furtherance of the conspiracy. United States v. Shabani, 513 U.S. 10, 11 (1994). Thus, the conspiracy itself -- and no act in furtherance of it, homicidal or otherwise -- serves as the predicate drug offense under section 848(e)(1)(A). So long as the defendant enters into the unlawful agreement before the killing, and the conspiracy is ongoing when the killing occurs, the drug-offense and killing elements of section 848(e)(1)(A) are satisfied by independent acts that overlap in time.

Santos, noting that he was not involved in the charged drug conspiracy before the day of the murders, complains that his conviction rests on an interpretation of section 848(e)(1)(A) that would allow the drug-offense and killing elements to be "satisfied by one and the same act." Appellant's Br. 33. We disagree. The "while engaging in" language does imply two separate elements: one drug offense and one killing. An unlawful act committed in furtherance of a drug conspiracy, however, is not itself the drug conspiracy or any element thereof. But such acts -- including killings -- may and often do serve as powerful circumstantial evidence that the charged conspiracy existed and that the actor joined it. See United States v. Quinones, 511 F.3d 289, 308 (2d Cir. 2007); United States v. Aleskerova, 300 F.3d 286, 292-93 (2d Cir. 2002); see also United States v. Hunte, 196 F.3d 687, 691 (7th Cir. 1999); United States v. Johnston, 146

10

F.3d 785, 789 (10th Cir. 1998), cert. denied, 525 U.S. 1088 (1999). Thus, although a murder committed by the defendant in furtherance of a drug conspiracy cannot itself satisfy the drug-offense element of section 848(e)(1)(A), it can, in appropriate circumstances, persuade the jury that the defendant was a member of the drug conspiracy in furtherance of which the killing was committed. This would be consistent with the commands of the statute.

B. Nexus Between Drug Offense and Killing

Next, Santos argues that section 848(e)(1)(A) requires a "direct and substantial nexus" between the killing and the drug offense. Appellant's Br. 42. Santos does little to explain what a "direct and substantial nexus" means, although he suggests that the killing must be "directly related . . . , either proximately or temporally," to the charged drug offense, id. at 43, and that a defendant cannot be convicted if the connection is "too limited and attenuated," id. at 44. These proposed standards are too vague to give courts and juries sufficiently concrete guidance. We therefore decline to adopt them.

In United States v. Desinor, 525 F.3d 193 (2d Cir. 2008), we concluded that section 848(e)(1)(A) does require a meaningful connection between the killing and the drug offense. See id. at 202. We explained the requirement as follows:

> To convict a defendant of engaging in a
> narcotics conspiracy resulting in
> murder . . . under 21 U.S.C. § 848(e)(1)(A),
> the government need only prove beyond a
> reasonable doubt that one motive for the

11

killing . . . was related to the drug conspiracy. The existence of other motives does not affect the government's ability to satisfy the "engaging in" element, as long as there is a substantive connection between the defendant's role in the murder . . . and his participation in the drug conspiracy. The government has no burden to establish that a drug-related motive was the sole purpose, the primary purpose, or even that it was equally as important as any non-drug-related purpose, as long as it was one purpose.

Id. (citation omitted).[5]

By focusing on the defendant's motive or purpose in the killing, the Desinor standard requires a finding of fact familiar to and accessible by juries. We think the rule set forth in Desinor fully satisfies whatever "nexus" requirement might be implied by the language of section 848(e)(1)(A).

II. Sufficiency of the Evidence

We turn now to Santos's claim that the evidence presented at trial was insufficient to sustain his conviction. "It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden." United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.), cert. denied, 516 U.S. 1001 (1995) (citation and internal quotation marks omitted). While "a conviction based on speculation and surmise alone cannot stand," United States v.

---

[5] In Desinor, we approved jury instructions stating that the government must prove a murder in connection with, and not just contemporaneous to, a serious drug offense: "For example, a defendant engaging in a narcotics conspiracy who kills a spouse in a purely non-drug-related domestic dispute would not satisfy this element . . . ." Desinor, 525 F.3d at 201.

12

D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994), "the jury's verdict may be based entirely on circumstantial evidence," Martinez, 54 F.3d at 1043, and may be "inferred" from the evidence, United States v. Ceballos, 340 F.3d 115, 129 (2d Cir. 2003).  So long as the inference is reasonable, "it is the task of the jury, not the court, to choose among competing inferences."  Martinez, 54 F.3d at 1043 (citing United States v. Stanley, 928 F.2d 575, 577 (2d Cir.), cert. denied, 502 U.S. 845 (1991)).  Thus, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000) (citation, internal quotation marks, and alteration omitted).  In sum, a conviction must be affirmed if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

Santos's sufficiency-of-the-evidence assertion consists of two arguments, either one of which -- if successful -- would require us to reverse his conviction.  He argues that there was insufficient evidence (1) that he conspired to distribute five kilograms or more of cocaine and (2) of a substantial connection between the killings and the drug conspiracy.[6]  As explained below, we reject both arguments and conclude that the evidence

---

[6] Santos does not contest the sufficiency of the evidence that he shot and killed Garces and Bryan.

13

was sufficient to sustain Santos's conviction for drug-related murder under 21 U.S.C. § 848(e)(1)(A).

A.   The Drug Conspiracy

1.   Generally.  When a defendant challenges the sufficiency of the evidence in a conspiracy case, "deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel."  United States v. Morgan, 385 F.3d 196, 204 (2d Cir. 2004) (ellipsis in original) (citation and internal quotation marks omitted).  The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged, see United States v. Gaskin, 364 F.3d 438, 460 (2d Cir. 2004), cert. denied, 544 U.S. 990 (2005); (2) that the defendant had knowledge of the conspiracy, see United States v. Atehortva, 17 F.3d 546, 550-51 (2d Cir. 1994); and (3) that the defendant intentionally joined the conspiracy, see United States v. Casamento, 887 F.2d 1141, 1167 (2d Cir. 1989), cert. denied, 493 U.S. 1081 (1990).  Furthermore, in a conspiracy punishable under 21 U.S.C. § 841(b)(1)(A), the government must also prove (4) that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged.  United States v. Adams, 448 F.3d 492, 499 (2d Cir. 2006).[7]

_____

[7] "In contrast to the general conspiracy statute, 18 U.S.C. § 371, which requires the performance of an overt act, no overt

14

2. The Existence of the Conspiracy. Here, setting aside for the moment the extent of Santos's involvement, there was ample evidence that the charged drug conspiracy existed. The gist of a conspiracy is an agreement between two or more participants to achieve a particular illegal end. See United States v. Svoboda, 347 F.3d 471, 476 (2d Cir. 2003), cert. denied, 541 U.S. 1044 (2004); United States v. Stavroulakis, 952 F.2d 686, 690 (2d Cir.), cert. denied, 504 U.S. 926 (1992). "Moreover, the conspiratorial agreement itself may be established by proof of a tacit understanding among the participants, rather than by proof of an explicit agreement, and the absence of an actual sale or seizure of narcotics does not render insufficient the proof of a conspiracy to distribute it." United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997) (citations omitted), cert. denied, 525 U.S. 874 (1998). Medina testified that he worked for Polanco, importing and distributing hundreds of kilograms of cocaine and collecting drug debts and committing violence on Polanco's behalf. This evidence permitted the jury to infer reasonably that Medina and Polanco conspired to distribute five kilograms or more of cocaine.

3. Santos's Participation in the Conspiracy. Once the existence of a conspiracy has been established, the government must prove that the person charged "knew of the existence of the

---

act need be alleged or proven as a necessary element of a conspiracy under 21 U.S.C. § 846." United States v. Delvecchio, 816 F.2d 859, 864 (2d Cir. 1987); accord United States v. Shabani, 513 U.S. 10, 11 (1994).

15

scheme alleged in the indictment and knowingly joined and participated in it." United States v. Rahman, 189 F.3d 88, 123 (2d Cir. 1999) (citation and internal quotation marks omitted), cert. denied, 528 U.S. 1094 (2000).

We have overturned conspiracy convictions for insufficiency of the evidence where the government presented insufficient evidence from which the jury could reasonably infer that the defendant had knowledge of the conspiracy charged. See United States v. Friedman, 300 F.3d 111, 126 (2d Cir. 2002), cert. denied, 538 U.S. 981 (2003); United States v. Samaria, 239 F.3d 228, 236-38 (2d Cir. 2001); Atehortva, 17 F.3d at 551; United States v. Nusraty, 867 F.2d 759, 765 (2d Cir. 1989). In Atehortva, for example, the defendant was hired to commit a kidnaping for ransom, the purpose of which was to enforce a drug debt. Atehortva, 17 F.3d at 548. We concluded that the evidence was insufficient to support a conviction for a narcotics conspiracy because the government failed to prove that the defendant, although he knowingly joined and participated in the kidnaping plot, "knew of the existence of the . . . debt, or that he knew or should have known that the debt resulted from a narcotics transaction." Id. at 551 (footnote omitted).

We have similarly overturned conspiracy convictions where, although the defendant had knowledge of the conspiracy, there was insufficient evidence from which the jury could reasonably have inferred that the defendant intended to join it. See United States v. Ceballos, 340 F.3d 115, 127-28 (2d Cir.

16

2003); United States v. Young, 745 F.2d 733, 764 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985); United States v. Gaviria, 740 F.2d 174, 184 (2d Cir. 1984). In the absence of an explicit agreement to join a conspiracy, we typically look for evidence that the defendant, in addition to knowing the essential nature of the plan, has "associated himself with the venture in some fashion, participated in it as something that he wished to bring about, or sought by his action to make it succeed." United States v. Vargas, 986 F.2d 35, 39 (2d Cir.) (citation, internal quotation marks, and alterations omitted), cert. denied, 510 U.S. 827 (1993); see also Desimone, 119 F.3d at 223 ("An individual defendant's membership in a conspiracy may not be established simply by his presence at the scene of a crime, nor by the fact he knows that a crime is being committed. Instead, membership requires proof of purposeful behavior aimed at furthering the goals of the conspiracy.").

Here, there is more than sufficient evidence on which a rational jury could have based a finding that Santos knew of the drug conspiracy. On the morning of the murders, Medina explained to Santos that Medina's "uncle" -- Polanco -- was a heavy-selling drug dealer who wanted two men killed for robbing him of $316,000. Santos, in response, expressed interest in the drug-dealing operation, inquiring as to the price per kilogram of cocaine.

There is also ample evidence that Santos engaged in "purposeful behavior," Desimone, 119 F.3d at 223: He agreed to

17

commit the murders and in fact then shot Garces and Bryan to death.

We are left with two questions in this regard: (a) whether a rational jury could find that Santos knew these acts of violence were intended to further the ongoing conspiracy to distribute cocaine; and (b) whether a rational jury could find that he joined the conspiracy "as something that he wished to bring about" and with the intent "to make it succeed," Vargas, 986 F.2d at 39 (citation, internal quotation marks, and alteration omitted). We think both inferences were permissible.

Because narcotics conspiracies are illicit ventures, disputes are frequently settled by force or the threat of force. See, e.g., Atehortva, 17 F.3d at 548 (kidnaping for ransom to enforce drug debt); see also United States v. Sureff, 15 F.3d 225, 228-29 (2d Cir. 1994) (noting that "drug trafficking is often attended by violence"); United States v. Crespo, 834 F.2d 267, 271 (2d Cir. 1987) ("We often have taken judicial notice that, to substantial dealers in narcotics, firearms are . . . tools of the trade . . . ."), cert. denied, 485 U.S. 1007 (1988). Consequently, "[a]dvancing the aim of [a narcotics] conspiracy can involve performing ancillary functions such as . . . enforcing discipline [and] chastising rivals." United States v. Soto-Beníquez, 356 F.3d 1, 18 (1st Cir.), cert. denied, 541 U.S. 1074 (2004); see also United States v. Jenkins, 419 F.3d 614, 620 (7th Cir.) ("Different people play different roles in a drug conspiracy, be it supplier, lookout, courier, or enforcer."),

18

cert. denied, 546 U.S. 1051 (2005).  Violence furthers such a conspiracy when used to collect debts directly, as in Atehortva, or, as in this case, "by sending the message that those suspected of stealing from the conspiracy would be treated harshly," Soto-Beníquez, 356 F.3d at 32.  And Medina testified extensively regarding other acts of violence he had carried out in furtherance of this and other drug conspiracies.  In light of these facts established at trial, a reasonable jury could permissibly have concluded that Santos knew not only the nature of the drug conspiracy, but knew also that carrying out the murders would advance its goals.

In addition to proving that Santos knew his acts would enable Medina to further the goals of the conspiracy, the government was required to prove that Santos had the specific intent to do so.  See Samaria, 239 F.3d at 234.  Proof of conspiratorial intent, of course, may be established through circumstantial evidence.  United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998).  And where there is evidence that the defendant had knowledge of the conspiracy and knowingly took actions advancing the conspiracy's aims, we ordinarily will permit the jury "to infer intent and agreement from knowledge," particularly in the context of the defendant's "interested cooperation, stimulation, and instigation," or when the defendant has a "stake in the venture."  United States v. Zambrano, 776 F.2d 1091, 1095 (2d Cir. 1985) (internal quotation marks omitted) (citing Direct Sales Co. v. United States, 319 U.S. 703, 712-13 (1943)); see

19

also, e.g., United States v. Flaharty, 295 F.3d 182, 201 (2d Cir. 2002) (affirming narcotics conspiracy conviction of arms dealer because "the evidence was ample to permit the jury to infer that [the defendant] knew his purchasers were jointly engaged in narcotics trafficking, that he made numerous and repeated sales to the coconspirators, and that he intended his sales to further their business"), cert. denied, 538 U.S. 915 (2003).

There was indeed sufficient evidence for a reasonable jury to conclude that Santos had the specific intent to further the goals of the conspiracy. In addition to knowing that Medina and his "uncle" wished to advance the goals of their narcotics conspiracy by killing the men who they said had stolen from them, Santos exhibited a form of "interested cooperation, stimulation, and instigation" that would permit the jury to infer the "intent and agreement necessary to sustain a conspiracy charge," Zambrano, 776 F.2d at 1095. Santos's affirmative requests to know more about the purpose behind the killings and details of the drug conspiracy, his declaration that "[t]hese motherfuckers are dead with me today," Trial Tr. 339, United States v. Santos, No. 01-cr-537 (E.D.N.Y. Nov. 9, 2004), and his participation in the killings themselves together amount to a set of circumstances from which the jury could conclude that Santos joined the conspiracy charged. And "[a]lthough, as [Santos] argues, a reasonable juror may have reached a contrary conclusion, such matters are appropriately argued to the jury and are not grounds

20

for reversal on appeal." United States v. Snow, 462 F.3d 55, 69 (2d Cir. 2006), cert. denied, 127 S. Ct. 1022 (2007).

That Santos did not participate in the narcotics conspiracy in some way other than carrying out the murders does not undermine the sufficiency of the evidence that he was a co-conspirator. "The defendant's participation in a single transaction can, on an appropriate record, suffice to sustain a charge of knowing participation in an existing conspiracy." United States v. Miranda-Ortiz, 926 F.2d 172, 176 (2d Cir.), cert. denied, 502 U.S. 928 (1991). "The defendant need not know the identities of all of the other conspirators, nor all of the details of the conspiracy," Gore, 154 F.3d at 40, and "[a] defendant need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he or she became a member," United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992). Santos may not have played a central role in the charged cocaine conspiracy, but he is liable as a co-conspirator if the jury found -- as it apparently did and reasonably could have here -- that he "knew of [its] existence . . . and knowingly joined and participated in it." Snow, 462 F.3d at 68 (citations and internal quotation marks omitted); see also Soto-Beníquez, 356 F.3d at 23.[8]

---

[8] Santos's sufficiency-of-the-evidence claim contains a barely argued contention that the district court should have given the jury a multiple-conspiracy charge because there was evidence of a conspiracy to commit murder in addition to the

21

Finally, the kind of drug involved and its weight were known or reasonably foreseeable to Santos. See Adams, 448 F.3d at 499. Medina told Santos that his "uncle" -- Polanco -- was a well-connected, heavy-selling cocaine dealer and had been robbed of $316,000 -- an amount that would have represented the proceeds from far more than five kilograms of cocaine. Santos took an active interest in the drug type and quantity, inquiring specifically as to the sale price per kilogram of cocaine. We conclude that the evidence was sufficient for the jury to find the drug-type and quantity elements proved beyond a reasonable doubt.

---

conspiracy to distribute cocaine. This claim is without merit. "In order to prevail on a contention that the trial court erred in refusing to give requested instructions, an appellant must establish that his own requested charge accurately represented the law in every respect, and that the charge actually given, viewed as a whole, prejudiced him." United States v. Thompson, 76 F.3d 442, 454 (2d Cir. 1996) (citation and internal quotation marks omitted). Here, the defense theory was that the jury must acquit if it found that Santos had joined a conspiracy to murder but not a drug conspiracy. The jury instructions properly emphasized, however, that the "government must prove beyond a reasonable doubt . . . that the conspiracy be to commit an unlawful act concerning narcotics," Trial Tr. 905, United States v. Santos, No. 01-cr-537 (E.D.N.Y. Nov. 18, 2004) (emphasis added), and that "the government must establish that the defendant intentionally killed Wilber Garces and/or Edgardo Bryan while engaging in a conspiracy to distribute . . . five kilograms or more of . . . cocaine," id. at 907-08 (emphasis added). Because there was no evidence of more than one drug conspiracy and the instructions clearly required the jury to find that the defendant had participated in such a conspiracy in order to convict, the jury charge was adequate.

22

B.  Connection Between the Killings
    and the Drug Conspiracy

Having determined that there was sufficient evidence for the jury to find that Santos joined the drug conspiracy as charged, we conclude without difficulty that there was sufficient evidence of a connection between the drug conspiracy and the killings.  As noted, "the government need only prove beyond a reasonable doubt that one motive for the killing[s] . . . was related to the drug conspiracy."  Desinor, 525 F.3d at 202. Again, the evidence reflects that Santos asked Medina why he was being hired, and Medina told him that his "uncle" -- Polanco -- was a large-scale cocaine dealer who wanted two men killed for stealing $316,000.  If the jury found that Santos joined the drug conspiracy, then it unquestionably could have found that one motive for the killings was related to that conspiracy.

Santos's argument to the contrary rests primarily on what he contends is the absence of persuasive evidence that Polanco was robbed by the men he wanted killed and that his desire to have them killed was related to his drug dealing.  The alleged robbery took place more than two years before the killings, and neither Polanco nor Medina was present when the robbery took place.  Santos's argument is misplaced, however, because Santos was told that Polanco had ordered the killings in retaliation for a drug-related robbery.  Assuming Santos believed what he was told, that was enough for the jury to find that

23

Santos's motive for committing the murders was, at least in part, related to the drug conspiracy.

Santos also argues that the killings were unrelated to the drug conspiracy because he agreed to carry them out before he learned about the drug conspiracy. But the record fails to support this assertion. The first time Santos expressed his intent to kill anyone was when, after Medina explained that his drug-dealer "uncle" had been robbed of $316,000, Santos exclaimed, "These motherfuckers are dead with me today." Trial Tr. 339, United States v. Santos, No. 01-cr-537 (E.D.N.Y. Nov. 9, 2004).

Last, we reject Santos's argument that his motive was not drug related because Medina told him that his "uncle" had been robbed, thereby suggesting to Santos that the murders were motivated by Medina's desire to exact revenge on behalf of his family rather than in furtherance of the drug conspiracy. This argument is unavailing. As we explained in Desinor, the jury need only find that one motive for the killing was drug related. See Desinor, 525 F.3d at 203 (concluding that "the jury easily could have inferred that . . . whether or not there was also a personal vendetta . . . there was an underlying motive to protect the [defendants'] narcotics business from . . . interference"). Here, too, the jury easily could have inferred that an underlying motive for the murders was related to the drug conspiracy.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.