14-4120
*United States v. Guerrero*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: November 17, 2015      Decided: February 11, 2016)

Docket No. 14-4120

————————

UNITED STATES OF AMERICA,

*Appellee,*

−v.−

ANTONIO GUERRERO, aka Tony,

*Defendant-Appellant.*[*]

————————

Before:

KEARSE, STRAUB, and WESLEY, *Circuit Judges*.

————————

Appeal from the United States District Court for the Southern District of New York (Sweet, J.).  Defendant-Appellant Antonio Guerrero was convicted after a jury trial of two counts of intentional murder while engaged in a drug trafficking

———————————

[*] The Clerk of Court is respectfully requested to amend the caption as set forth above.

offense, in violation of 21 U.S.C. § 848(e)(1)(A). On appeal, Guerrero seeks vacatur of his conviction on the grounds that: (1) the Fair Sentencing Act of 2010's enactment before his sentencing retroactively modified the drug quantity aspect of the murder offense's drug trafficking element, 21 U.S.C. § 841(b)(1)(A); (2) the Government failed to separately charge him with, and convict him of, the predicate drug trafficking offense; (3) the statute of limitations for the predicate drug trafficking offense governed and barred his murder prosecution; and (4) the Government's search of his home violated his Fourth Amendment constitutional rights. We reject these challenges and AFFIRM the judgment of conviction, but the matter is REMANDED for the sole purpose of making a clerical correction to the judgment's description of Count 1 by replacing "844(e)(1)(A)" with "848(e)(1)(A)".

JEFFREY M. BRANDT, Robinson & Brandt, P.S.C., Covington, KY, *for Defendant-Appellant*.

LAURIE A. KORENBAUM, Assistant United States Attorney (Michael D. Maimin, Justin Anderson, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

———————————

WESLEY, *Circuit Judge*:

Defendant-Appellant Antonio Guerrero was convicted, after a jury trial in the United States District Court for the Southern District of New York (Sweet, J.), of two counts of intentional murder while engaged in a drug trafficking offense, in violation of § 848(e)(1)(A). Guerrero challenges his conviction on several grounds related to that statute's drug trafficking element. He also raises Fourth

Amendment issues. We reject his challenges and AFFIRM the judgment of conviction.

A murder conviction under 21 U.S.C. § 848(e)(1)(A) requires proof that the defendant was "engaging" in a drug trafficking offense punishable under 21 U.S.C. § 841(b)(1)(A) at the time he committed the intentional murder. On appeal, Guerrero presents three challenges related to § 848(e)(1)(A)'s drug trafficking element: (1) that the Fair Sentencing Act of 2010 ("FSA" or "Act") retroactively invalidates a pre-Act verdict under § 848(e)(1)(A) predicated upon a pre-Act drug trafficking quantity under § 841(b)(1)(A), where the defendant is sentenced post-Act; (2) that he could not properly be indicted for violating § 848(e)(1)(A) unless he had previously been convicted of the predicate drug trafficking offense; and (3) that the predicate drug trafficking offense's statute of limitations governs a § 848(e)(1)(A) murder prosecution.

As noted, Guerrero also claims Fourth Amendment violations arising from his arrest. Specifically, Guerrero challenges the admission of certain evidence recovered from his home during his arrest on the grounds that it was discovered as a result of (1) an unlawful protective sweep and (2) an involuntary consent.

BACKGROUND

In the 1990s, Antonio Guerrero was a member of "Solid Gold," a drug organization that sold crack cocaine out of gold-capped vials near 173rd Street in the Bronx, New York. Solid Gold engaged in many turf battles with rival drug dealers over the years. In connection with one such dispute, Guerrero shot and killed rival crack cocaine dealer Livino Ortega, who apparently had been impinging on Solid Gold's territory and damaging its brand by selling inferior-quality crack cocaine using Solid Gold's packaging. Guerrero also killed Ortega's friend, Fernando Garrido, in the same September 3, 1994 shooting incident.

On April 7, 2009, a federal grand jury in the Southern District of New York returned an indictment charging, *inter alia*, Guerrero with the intentional murders of Ortega (Count One) and Garrido (Count Two) while engaged in an offense punishable under § 841(b)(1)(A), "to wit, a conspiracy to distribute fifty grams and more" of crack cocaine, in violation of § 848(e)(1)(A). App'x 27–28.

Guerrero was arrested at his Miami, Florida home the following week and tried to a jury in the Southern District of New York beginning April 2010. After a

4

six-week trial, Guerrero was found guilty of both counts on June 7, 2010.[1]

Guerrero thereafter filed a series of unsuccessful post-trial motions, and the

District Court sentenced him principally to two concurrent terms of 25 years'

imprisonment.  A judgment of conviction was entered October 16, 2014.[2]

## DISCUSSION[3]

## I.   Fair Sentencing Act Challenge

Guerrero was convicted of intentional murder while engaged in a drug

trafficking conspiracy, in violation of § 848(e)(1)(A), which provides in pertinent

part:

> [A]ny person engaging in an offense punishable under section
> 841(b)(1)(A) of this title . . . who intentionally kills . . . or causes the
> intentional killing of an individual and such killing results, shall be
> sentenced to any term of imprisonment, which shall not be less than
> 20 years, and which may be up to life imprisonment, or may be
> sentenced to death . . . .

---

[1] The record reflects a discrepancy regarding the date of the jury verdict.  *Compare* App'x 15, 24, *and* 525 (indicating June 4, 2010), *with* App'x 18, 22, 421, *and* 423 (indicating June 7, 2010).  We rely on the trial transcript, which indicates the correct date to be June 7, 2010.  *See* App'x 402, 415–19.

[2] The judgment contains a typographical error.  It misidentifies Count 1 as pursuant to § 844(e)(1)(A), *see* App'x 553, but both counts are in fact pursuant to § 848(e)(1)(A), *see* App'x 27–28, 415.

[3] Guerrero's challenges to his conviction implicate questions of statutory interpretation, which are questions of law that we review *de novo*.  *See United States v. Santos*, 541 F.3d 63, 67 (2d Cir. 2008).

21 U.S.C. § 848(e)(1)(A). At the times of Guerrero's murder offense conduct, indictment, and conviction, the threshold quantity of crack cocaine for an offense punishable under § 841(b)(1)(A) was 50 grams or more. Then, on August 3, 2010, Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372, a law designed to help reduce sentencing disparities between powder cocaine and crack cocaine offenses. *See Dorsey v. United States*, 132 S. Ct. 2321, 2329 (2012); *United States v. Johnson*, 732 F.3d 109, 112 (2d Cir. 2013). Among other changes, the FSA increased the threshold quantity of crack cocaine necessary to trigger the enhanced sentencing provision under § 841(b)(1)(A) from 50 grams to 280 grams. *See* Pub. L. No. 111–220, § 2(a), 124 Stat. 2372. The Act makes no mention of § 848(e)(1)(A). *See id.*

A few years after the FSA's enactment, the Supreme Court in *Dorsey* addressed whether the Act's more lenient sentencing regime applied retroactively to defendants who committed crack cocaine offenses before August 3, 2010, but who were not sentenced until after that date. *Dorsey*, 132 S. Ct. at 2326. The Court held that it did, reasoning in part that Congress through the FSA intended to apply to mandatory minimum sentences the established principle that "sentencing judges [are] to use the Guidelines Manual in effect on

6

the date that the defendant is sentenced, regardless of when the defendant committed the offense, unless doing so would violate the *ex post facto clause*." *Id.* at 2332 (internal quotation marks omitted); *accord United States v. Highsmith*, 688 F.3d 74, 77 (2d Cir. 2012) (per curiam).

Guerrero argues that the FSA compels vacatur of his conviction. He reasons that, while his September 1994 murder offense conduct and June 2010 conviction preceded the FSA, his October 2014 sentencing occurred after the Act went into effect, and, under *Dorsey*'s retroactivity rule, § 848(e)(1)(A)'s drug trafficking element required the jury to find that the conspiracy involved at least 280 grams of crack cocaine. Because only a quantity of 50 grams was alleged and proved, the argument goes, the Government failed to establish an element of the charged murder offense and Guerrero's conviction must be vacated.

This argument misreads § 848(e)(1)(A), misunderstands the FSA, and misapplies *Dorsey*. A defendant may be convicted under § 848(e)(1)(A) if he was engaged in a drug trafficking offense punishable under § 841(b)(1)(A) at the time he committed intentional murder.[4] The crime is complete at the time of the

---

[4] Of course, a defendant need not be "actively engaged in the distribution of drugs in order to be convicted under the drug-related murder prong of section 848(e)(1)(A). The defendant need only be engaging in an offense punishable under section 841(b)(1)(A),

7

murder, *see* 21 U.S.C. § 848(e)(1)(A), and it is as of that time that the statute's drug trafficking element is measured. Here, Guerrero committed the murders in September 1994, at which time the threshold quantity of crack cocaine necessary under § 841(b)(1)(A) was 50 grams or more. The jury's finding that Guerrero had been engaged in a conspiracy to distribute 50 grams or more of crack cocaine at the time he intentionally killed Ortega and Garrido therefore satisfied the drug trafficking element of the § 848(e)(1)(A) murder offense. There was no error in the indictment, the instructions, or the verdict.

No other conclusion flows from the FSA, a sentencing statute principally designed to increase threshold quantities of drugs necessary to trigger certain enhanced penalty schemes, to remove certain mandatory minimum sentences, and to direct the promulgation of new Sentencing Guidelines. *See* Pub. L. No. 111–220, 124 Stat. 2372. The general federal savings statute provides in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of

which includes conspiracy to commit such an offense." *Santos*, 541 F.3d at 68 (citation omitted) (internal quotation marks omitted).

8

sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. Because the FSA did not expressly extinguish any criminal liability under § 848(e)(1)(A), the law's enactment did not retroactively invalidate Guerrero's conviction.

*Dorsey* is equally unaccommodating to Guerrero's challenge. That decision's retroactivity rule simply permits defendants who committed offenses before August 3, 2010, but who were not sentenced until after that date, to be sentenced under the FSA's more lenient sentencing regime. *See Dorsey*, 132 S. Ct. at 2335 ("Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). *Dorsey* nowhere purports to limit criminal liability for an offense such as murder in violation of § 848(e)(1)(A). Guerrero's FSA-based challenge to his conviction fails.

## II. Predicate Drug Trafficking Offense & Statute of Limitations Challenges

Guerrero next argues that the Government could not even "charge[]" him with murder in violation of § 848(e)(1)(A) unless he had, "before" being so charged, "be[en] convicted of the underlying drug offense." *See* Appellant's Br. 52. Section 848(e)(1)(A) makes no such demand. The statute requires the

Government to prove that the defendant was engaged in a predicate drug offense at the time of the intentional murder. Guerrero does not dispute that the evidence at trial was sufficient to establish that at the time of the murders he was engaged in trafficking in crack cocaine as a member of Solid Gold; and he acknowledges that "the district court instructed the jury that, to find Guerrero guilty of the § 848(e) charges, it had to find that Guerrero killed while engaged in a drug conspiracy involving 50 grams or more of crack cocaine (and, therefore, punishable under § 841(b)(1)(A))." *See* Appellant's Br. 15; *see also* Trial Tr. 3383 (instructing that to convict under § 848(e)(1)(A) the jury must find, *inter alia*, that the defendant "intentionally killed" and that the drug dealing and the killing "were in some way related or connected"). There is no suggestion that the jury was not properly instructed on all of the elements of the § 848(e)(1)(A) offense. The statute does not require that the defendant have been previously convicted of, or be separately charged with, the predicate drug offense in order to be charged or convicted under § 848(e)(1)(A).

Guerrero relatedly argues that his § 848(e)(1)(A) murder prosecution is governed by the predicate drug offense's five-year statute of limitations, as set forth in 18 U.S.C. § 3282. It is not. Section 848(e)(1) establishes a capital offense

punishable by "any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or . . . death." 21 U.S.C. § 848(e)(1)(A). Guerrero's § 848(e)(1)(A) prosecution is therefore governed by 18 U.S.C. § 3281, which provides that "[a]n indictment for any offense punishable by death may be found at any time without limitation."[5] 18 U.S.C. § 3281. That the Government elected not to pursue capital punishment here is immaterial to whether Guerrero's § 848(e)(1)(A) offenses are in fact capital offenses for purposes of § 3281. *Cf. United States v. Payne*, 591 F.3d 46, 59 (2d Cir. 2010).

## III.    Fourth Amendment Challenges

As part of Guerrero's April 15, 2009 arrest at his Florida home pursuant to a warrant, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives conducted a protective sweep of Guerrero's home and, in the process, saw a photograph of Guerrero with suspected members of a drug trafficking organization. They then obtained Guerrero's oral and written consent for a limited search for, and seizure of, photographs depicting members of that

---

[5] Indeed, courts of this Circuit have held the same. *See, e.g.*, *Soler v. United States*, No. 05 CR. 165 LAP, 2015 WL 4879170, at *22 (S.D.N.Y. Aug. 14, 2015); *United States v. Dames*, No. 04 CR. 1247 PAC, 2007 WL 1032257, at *1 (S.D.N.Y. Mar. 30, 2007); *United States v. Martinez-Martinez*, No. 01 CR 307, 2001 WL 1287040, at *2 (S.D.N.Y. Oct. 24, 2001).

organization.  Guerrero challenges the admission of those photographs as fruits of an unlawful protective sweep and an involuntary consent.

Under the Fourth Amendment's protective sweep exception, agents executing an arrest inside a home may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  *Maryland v. Buie*, 494 U.S. 325, 334 (1990); *United States v. Jackson*, 778 F.2d 933, 937 (2d Cir. 1985) (stating principle that officers may perform a protective sweep "to check for third persons who may destroy evidence or pose a threat to the officers" (internal quotation marks omitted)).  Where agents execute an arrest just outside the home, they are authorized to sweep the house if there are articulable facts that would warrant the reasonable belief that someone within the home is "aware of the arrest outside the premises" and "might destroy evidence, escape or jeopardize the safety of the officers or the public."  *United States v. Oguns*, 921 F.2d 442, 446 (2d Cir. 1990) (internal quotation marks omitted).  Here, whether Guerrero's arrest occurred inside his home or just outside of it, we find no error in the District Court's conclusion that the protective sweep was justified under the circumstances.

Under the Fourth Amendment's consent exception, "warrantless entry and search are permissible if the authorities have obtained the voluntary consent of a person authorized to grant such consent." *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995). To be valid, consent must be voluntary and therefore cannot "be coerced, by explicit or implicit means, by implied threat or covert force." *United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). We do "not reverse a finding of voluntary consent except for clear error." *United States v. Moreno*, 701 F.3d 64, 76 (2d Cir. 2012) (internal quotation marks omitted). Here, based on the record, including the District Court's credibility determinations, we find no such error.

## CONCLUSION

We have considered all of Guerrero's arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED, but the matter is REMANDED for the sole purpose of making a clerical correction to the judgment's description of Count 1 by replacing "844(e)(1)(A)" with "848(e)(1)(A)".