*United States v. Tyrone Felder*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 24th day of January, two thousand nineteen.

Present:    ROBERT A. KATZMANN,
                    *Chief Judge*,
                PETER W. HALL,
                GERARD E. LYNCH,
                    *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

                v.                                              No. 17-2503

TYRONE FELDER, AKA MEME, AKA MANMAN,

                    *Defendant-Appellant*,

KAREEM MARTIN, AKA HEAVY, AKA REEM, AKA
JAMAL WALKER, NICOMEDES FRASQUERI, AKA
NICK, FREDRICK ALLEN, AKA FOX, ANGEL
AMERZQUITO, KEVIN ANTHONY, AKA KEV-O,
KELVIN DOUGLAS, AKA 40 CAL, DERRICK FELDER,
AKA UNC, ANTHONY GIVENS, AKA FACE, KERI
GIVENS, BRIAN HALL, AKA TATS, ELIJAH
HUBBARD, AKA SPAZZ, TERRELL JOHNSON, AKA
RELIN, TYRONE MARGWOOD, SHANEQUEA
MASCALL, AKA NENE, LAMONT OBEY, AKA GOTTI,
TOMMY SMALLS, AKA TOMMY GUNZ, GEORGE
STONE, AKA JIZZ, JEROME THOMAS, AKA ROME,
JOHNA THOMAS, AKA TOMBOY,

                    *Defendants*.

_____

For Defendant-Appellant:   JESSE M. SIEGEL, Law Office of Jesse M. Siegel, New York, NY.

For Appellee:   ELI J. MARK, Gina Castellano, Anna M. Skotko, Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Tyrone Felder appeals from a judgment of conviction entered on August 2, 2017 by the United States District Court for the Southern District of New York (Caproni, *J.*), following a jury trial, convicting him of conspiracy to distribute and possess with intent to distribute 280 grams of crack cocaine and brandishing firearms in connection with that conspiracy, and sentencing him principally to twenty-six years' imprisonment to be followed by five years' supervised release. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

At trial, the government presented evidence that Felder was a leader of the Young Gunners gang ("YGz"), which sold drugs in River Park Towers (the "Towers"), a public housing project in the Bronx. YGz members sold drugs every day throughout the Towers, as often as twenty times a day. Members bagged drugs for distribution together, sold drugs from a common "stash," referred customers to each other, and warned other members of police presence when they were selling. In order to sell drugs in the Towers, dealers had to be associated with the YGz. Witnesses for the government testified that Felder personally sold drugs, collected proceeds from drug sales, and protected the YGz territory through threat of force.

Before Felder's sentencing, the Probation Office submitted its Presentence Report. This report concluded that Felder was a career offender under Section 4B1.1(b)(1) of the Guidelines, based in part on a conviction for New York Robbery in the Second Degree. Felder was adjudicated a youth offender for this conviction and initially sentenced to six months' imprisonment and five years' probation; this probation was revoked on November 19, 2007 and he was resentenced to one year of imprisonment. At sentencing, the district court agreed with Probation that Felder was a career offender. After calculating the applicable Guidelines range as imprisonment for thirty-seven years to life, and weighing the 3553(a) factors, the district court sentenced Felder to twenty-six years' imprisonment.

Felder first challenges the procedural reasonableness of his sentence, arguing that the district court incorrectly determined that he was a career offender by mistakenly treating the New York State robbery conviction for which he was adjudicated a youthful offender as an adult conviction for purposes of the Career Offender Guideline. *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (a district court commits procedural error where it makes a mistake in its Guidelines calculation). Because Felder did not raise this objection below, it is reviewed for plain error. *United States v. Cassesse*, 685 F.3d 186, 188 (2d Cir. 2012). Felder does not dispute that this Court has held that where, as here, a defendant was tried and convicted in an adult court and served his sentence in an adult prison, his New York State youthful offender adjudication is a predicate conviction under the Career Offender Guideline. *United States v. Jones*, 415 F.3d 256, 261 (2d Cir. 2005). Instead, he argues that the district court erred because *Jones* was wrongly decided and implicitly overturned by *United States v. Sellers*, 784 F.3d 876 (2d Cir. 2015). However, a panel of this Court may not overrule the holding of an earlier panel unless the earlier panel's rationale is overruled, implicitly or explicitly, by the Supreme Court or by this Court sitting *en banc*. *In re Sokolowski*, 205 F.3d 532, 534-35 (2d Cir. 2000) (per curiam). Therefore, *Jones* is binding on this Court and Felder's argument fails.

Felder next argues that there was insufficient evidence to support his conviction for narcotics conspiracy (and so also his conviction for brandishing firearms in connection with that conspiracy) and the jury's finding that he knew or reasonably foresaw that the conspiracy would involve 280 grams of crack cocaine. This Court reviews a challenge to the sufficiency of evidence *de novo*. *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997). The government must "introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proven beyond a reasonable doubt." *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir. 1994). A defendant challenging the sufficiency of evidence bears a "heavy burden," as a conviction must be upheld "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013) (internal citations and quotation marks omitted). In a narcotics conspiracy case punishable under 21 U.S.C. § 841(b)(1)(A), the government must prove: (1) the existence of the conspiracy charged; (2) the defendant's knowledge of the conspiracy; (3) that the defendant intentionally joined the conspiracy; and (4) that the drug type and quantity were known or reasonably foreseeable to the defendant. *United States v. Santos*, 541 F.3d 63, 70-71 (2d Cir. 2008).

There was enough evidence to support the jury's finding that Felder participated in a narcotics conspiracy. Felder emphasizes that the government did not present testimony from anyone with knowledge of the YGz's "internal workings." Appellant Reply Br. at 9. But "the jury's verdict may be based entirely on circumstantial evidence," *Santos*, 541 F.3d at 70 (quoting *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995)), and the government presented ample circumstantial evidence that Felder entered into an agreement with other YGz members to distribute crack cocaine. The government's witnesses testified not only that Felder was a member of the YGz, but also that he personally sold crack and other drugs, collected drug proceeds from other YGz members, and helped to protect YGz's territory in the Towers. The government also

4

introduced testimony that the YGz sold drugs, including crack, every day in the Towers, referred customers to each other, and shared a stash of drugs for sales.

There also was enough evidence to support the jury's finding that Felder knew or reasonably foresaw that this conspiracy would involve 280 grams of crack cocaine. Although there was no evidence that Felder personally received or handled large quantities of crack, there was evidence that the YGz gang collectively sold large amounts of the drug. YGz members sometimes sold as many as twenty "twists" of crack in one sale, and the gang engaged in as many as twenty drug transactions each day. Each "twist," on average, weighed approximately 0.0785 grams. Thus, if the YGz sold only ten twists of crack per day over the course of the five-year conspiracy, it would have distributed approximately 1,433 grams of crack. A rational juror could conclude from the evidence of Felder's leadership role in YGz and the overall volume of crack cocaine YGz distributed that Felder knew or reasonably foresaw that the conspiracy would involve at least 280 grams of crack.

We have considered all of Felder's remaining contentions and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is

**AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK