10-3150-cr
United States v. Page

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2010

(Argued: May 16, 2011    Decided: September 16,2011)

Docket No. 10-3150-cr

———————————————

UNITED STATES OF AMERICA

v.

ANTHONY PAGE,

*Defendant-Appellant.*

JOSEPHINE SULLIVAN,

*Defendant.*

———————————————

Before:

WALKER, HALL, and CHIN, *Circuit Judges.*

Appeal from a judgment of the United States

District Court for the District of Connecticut (Robert N.

Chatigny, *J.*) convicting defendant-appellant of narcotics

violations and unlawful possession of a firearm.

AFFIRMED.

> BRIAN P. LEAMING, Assistant United
> States Attorney (Robert M.
> Spector, Assistant United States
> Attorney, of counsel, on the
> brief), *for* David B. Fein,
> United States Attorney for the
> District of Connecticut, New
> Haven, Connecticut, *for*
> *Appellee.*

JONATHAN J. EINHORN, New Haven, Connecticut, *for Defendant-Appellant*.

CHIN, *Circuit Judge*:

In this case, defendant-appellant Anthony Page was charged in one indictment with narcotics violations and possession of a firearm after he had previously been convicted of a felony. The district court denied his motion to sever the firearm count from the narcotics counts. Page was tried on the counts together, and convicted on all counts. On appeal, Page argues that he was denied a fair trial because the jury was prejudiced when it heard that he had a prior felony conviction. We hold that the district court did not abuse its discretion when it declined to sever the firearm count. Accordingly, we affirm.

## STATEMENT OF THE CASE

### A. The Facts

The evidence at trial established the following:

In November 2007, an individual (the "cooperating witness," or "CW") was arrested in Norwich, Connecticut, on narcotics charges, and began cooperating with authorities. On December 4, 2007, the CW told investigators that he had spoken with Page -- with whom he had a prior relationship -- about buying crack cocaine. Under the supervision of law

- 2 -

enforcement, the CW arranged to purchase crack cocaine from Page. The CW spoke to Page, and Page directed him to a woman the CW knew to be Page's girlfriend, Josephine Sullivan; the CW had previously purchased drugs from her after making the arrangements with Page. Sullivan, who testified at trial, had been a part of Page's drug distribution business since the summer of 2007. The CW met Sullivan at her apartment, on Boswell Street, and purchased 27.4 grams of crack cocaine for $800.

In the spring of 2008, Page stopped selling crack cocaine and began selling heroin. Sullivan moved to 143 Hickory Street. She continued to assist Page by selling heroin that he delivered to her at that location.

On July 23, 2008, there was an incident outside a bar. Page became enraged and waved a gun. Later that evening, Page and Sullivan returned to 143 Hickory Street. Page was still agitated about the earlier incident, and thus, as he was about to leave the apartment, Sullivan suggested that he leave the gun to avoid any trouble. He agreed, and Sullivan placed the gun in her bedroom, near the mattress.

Early the next morning, law enforcement agents executed a search warrant at Sullivan's apartment at 143 Hickory Street. Sullivan and her cousin were present. The

agents seized heroin, marijuana, and a loaded Smith & Wesson .45 caliber revolver.  The gun was found in the bedroom, next to the mattress.  Some 77 bags of heroin were found in the same bedroom.

Page was arrested later that day at a different location.  After being read his *Miranda* rights, he admitted that the firearm and heroin belonged to him.  DNA testing would later show positive results for Page's DNA in the DNA mixture found on the firearm.

Prior to July 24, 2008, Page had been convicted in New Jersey of a crime punishable by imprisonment for more than a year.

**B.  *Proceedings Below***

Page was initially charged, by himself, in a one-count indictment with a narcotics violation.  On October 30, 2008, the government filed a superseding indictment, against Page and Sullivan, containing six counts.  Counts One through Five asserted narcotics violations; Count One named Sullivan only, and Page was named in all of Counts Two through Five, either alone or with Sullivan.  Count Six charged Page -- and only Page -- with possessing a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

On January 22, 2009, Page moved to sever Count Six. He argued that any limiting instruction would not eliminate the "inherent[]" prejudice that would result from the jury learning of his prior felony conviction. The district court discussed the motion with the parties during a conference on February 6, 2009, but it did not rule.

In the meantime, on February 5, 2009, Sullivan pled guilty to selling five grams or more of crack cocaine.

Page's motion to sever was argued on September 8, 2009, before jury selection was to begin. The government agreed to sever Count Three (which was later dismissed at the government's request), but otherwise opposed Page's motion. On September 16, 2009, the district court denied the motion, holding:

> The defendant has agreed to stipulate that he has a prior felony conviction. The jury will be made aware that he has stipulated to having been convicted of a prior felony, but no description of the facts underlying his prior conviction will be provided and no other mention will be made of his criminal record during the trial unless he chooses to testify. Together with a limiting instruction to the jury, this arrangement will serve the interest in judicial economy without unduly prejudicing the defendant.

At trial, at the close of the evidence, the jury was read a stipulation that "prior to July 24, 2008, Anthony Page was convicted of a crime punishable by imprisonment for

a term exceeding one year in New Jersey Superior Court, Essex County, New Jersey."  During the jury charge, while instructing the jury on the first element of the felon-in-possession count, the district court gave the following limiting instruction:

> [T]he defendant's prior conviction may be considered only for the fact that it exists and not for any other purpose. You are not to consider it for any other purpose.  You are not to speculate as to what the conviction was for nor may you consider the prior conviction in deciding whether the government has proven that the defendant actually possessed the firearm as alleged in the indictment.

On September 23, 2009, the jury found Page guilty on all four of the remaining counts, including the felon-in-possession count.  On July 27, 2010, Page was sentenced to 210 months' imprisonment on each of Counts Two, Four, and Five, and 120 months' imprisonment on Count Six, all to run concurrently.

This appeal followed.

## DISCUSSION

The sole issue presented on appeal is whether the district court erred in denying Page's motion to sever Count Six from the narcotics counts.  Relying on this circuit's decision in *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), Page argues that the inevitable spillover effect of

his prior felony conviction required severance, or at least bifurcation, of the felon-in-possession count from the narcotics counts and that the court's limiting instruction was insufficient to prevent the prejudicial effect of that knowledge.  We reject the argument.

**A.   *Applicable Law***

Rule 8(a) of the Federal Rules of Criminal Procedure provides for the joinder of offenses when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a). "Joinder is proper where the same evidence may be used to prove each count," *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991), or if the counts have a "sufficient logical connection," *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990).

Even if offenses are properly joined, in certain circumstances severance may be warranted.  Rule 14(a) provides that where joinder of offenses for trial "appears to prejudice a defendant or the government, the court may order separate trials of counts, . . . or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a). Moreover, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."

*Zafiro v. United States*, 506 U.S. 534, 539 (1993). This is because "Rules 8(b) and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Id.* at 540 (internal quotation marks and alterations omitted). Accordingly, "less drastic measures [than severance], such as limiting instructions, often will suffice" to cure any risk of prejudice and permit joinder. *Id.* at 539.

A district court's denial of a motion to sever is reviewed "only for abuse of discretion, and will not be overturned unless the defendant demonstrates that the failure to sever caused him substantial prejudice in the form of a miscarriage of justice." *Blakney*, 941 F.2d at 116 (internal citations omitted)(internal quotation marks omitted); *see also United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (defendant seeking severance "under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice" (internal quotation marks omitted)). Hence, the defendant must show that unfair prejudice resulted from the joinder, not merely that he "might have had a better chance for acquittal at a separate trial." *United States v. Rucker*, 586 F.2d 899, 902 (2d Cir.

1978).  In addition, "[a] defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."  *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998).

Finally, we have rejected the notion that the fact of a prior felony conviction is so prejudicial that it necessarily precludes a fair trial, as we have held in a single-count felon-in-possession case that "there are no circumstances in which a district court may remove the element of a prior felony conviction entirely from the jury's consideration by accepting a defendant's stipulation to that element."  *United States v. Chevere*, 368 F.3d 120, 122 (2d Cir. 2004) (*per curiam*); *accord United States v. Amante*, 418 F.3d 220, 223–24 (2d Cir. 2005).  In other words, where the prior felony conviction is an element of the charged crime, the district court cannot withhold the fact of a prior conviction from the jury.  *Chevere*, 368 F.3d at 121.

B.   *Application*

We conclude that the district court did not abuse its discretion in denying Page's motion to sever. Furthermore, joinder was proper here, for the following reasons.

First, there was a "sufficient logical connection" between the narcotics counts and the gun count. *Ruiz*, 894 F.2d at 505; *see also Blakney*, 941 F.3d at 116. The gun and 77 bags of heroin were found in the same bedroom at 143 Hickory Street at the same time as part of the same search. In his post-arrest statement, Page admitted that both the gun and heroin were his. The gun was an important "tool" of Page's "trade" -- trafficking in narcotics. *See United States v. Muniz*, 60 F.3d 65, 71 (2d Cir. 1995) ("[T]here are innumerable precedents of this court approving the admission of guns in narcotics cases as tools of the trade."); *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994) ("[T]his Court has repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade." (internal quotation marks omitted)).

Second, separate trials of the narcotics counts and the gun count would have required much of the same evidence. At a separate gun trial, to prove Page's knowing possession of the gun, the government would have been entitled to offer evidence of his narcotics trafficking. *See, e.g., United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) ("[E]vidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon.")

(quoting *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991)). At a separate narcotics trial, to prove the existence of a conspiracy to distribute narcotics, the government would have been entitled to offer proof of Page's possession of a "tool[] of the trade." *Muniz*, 60 F.3d at 71. If there were separate trials, witnesses would have had to testify twice as to, *inter alia*: the relationship between Sullivan and Page, including their drug activities; the circumstances that led to Page's gun being left in the bedroom at 143 Hickory Street; the execution of the search warrant; Page's post-arrest statement; and Sullivan's decision to plead guilty and cooperate. *See Blakney*, 941 F.2d at 116 ("The evidence in support of the two counts was thus interconnected, and the interests of judicial efficiency were served by having the counts tried together.").

Third, the district court took adequate precautions to limit the danger of unfair prejudice. The jury learned at the end of the trial through a stipulation that Page had been convicted previously of a felony, without any information relating to the underlying nature or facts of the offense, and without any suggestion that Page had more than one prior conviction. Moreover, the district court gave a specific limiting instruction, telling the jury

that it could consider the prior conviction only for the fact of its existence -- the first element of the felon-in-possession charge -- and not for any other purpose.  The district court repeated the latter admonition, and then, for good measure, specifically instructed the jury that it could not consider the prior conviction as proof that Page actually possessed the gun.  *See Zafiro*, 506 U.S. at 540 ("[E]ven if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and juries are presumed to follow their instructions." (internal quotation marks omitted)).

While the district court could have gone further and specified that the prior conviction could not be considered in relation to the narcotics counts, that admonition was adequately conveyed by the general prohibition against considering the conviction for any purpose other than the fact of its existence.

Finally, Page has not met his "heavy burden" of showing "substantial prejudice" from the joinder of the narcotics counts with the gun count.  *Amato*, 15 F.3d at 237. The sanitized evidence of the conviction and the district court's limiting instruction minimized the risk of prejudice.  In light of the overwhelming evidence presented against Page -- including the testimony of his former

girlfriend and his own confession -- the joinder of the narcotics and gun counts did not cause him substantial prejudice so as to warrant severance.

In arguing that severance (or bifurcation) is *required* when a felon-in-possession count is joined with other charges, Page relies primarily on *United States v. Jones*. There, we held that the district court "should have severed or, at least, bifurcated" a felon-in-possession count from three bank robbery counts. *Jones*, 16 F.3d at 492. Moreover, although the district court gave limiting instructions, we held that there was "an overwhelming probability that the jurors did not adhere to the court's instructions." *Id.* at 493.

While Page's reliance on *Jones* is understandable, the unusual facts of the case render it distinguishable. There were two trials. In the first, the defendant was tried for bank robbery and use of a firearm during a crime of violence. The jurors deadlocked 10 to 2 for acquittal, and a mistrial was declared. *Id.* at 489. The government then filed a superseding indictment, adding two felon-in-possession counts. The defendant moved to sever the felon-in-possession counts. The district court granted the motion as to one of the felon-in-possession counts, but denied it as to the other, which charged that the defendant, a prior

- 13 -

felon, possessed a firearm during the bank robbery. *Id.* In the second trial, the defendant was tried on three bank robbery counts and the felon-in-possession count. The district court prohibited the government from bringing out any details about the defendant's prior conviction, and also gave the jury a limiting instruction. *Id.* at 489-90. The jury convicted the defendant on all four counts. *Id*. at 490.

On appeal, we reversed the conviction on the felon-in-possession count because the government had not proven that the gun in question -- which was never recovered -- had traveled in interstate commerce. *Id.* at 491-92. We then reversed the convictions on the three bank robbery counts, on two alternative grounds. First, we held that the district court abused its discretion in not severing the gun count from the bank robbery counts. *Id.* at 492-93. We were concerned in particular with the government's "tactics" in adding the felon-in-possession charge only after the first trial had ended in a hung jury. We observed: "The ineluctable conclusion is that the government added the count solely to buttress its case on the other counts." *Id.* at 492. It was against this background that we held that the limiting instructions were inadequate. *Id.* at 493.

Second, we held that even if the trial court had properly denied the motion to sever, the three bank robbery counts had to be vacated because of "retroactive misjoinder" -- the jury learned of the defendant's prior conviction only because of the gun count, and yet the conviction on the gun count was reversed for failure of proof as to the interstate commerce element. *Id.* Accordingly, we reversed the convictions on the bank robbery counts on this alternative basis as well. *Id.*

The unique circumstances present in *Jones* do not exist here. There was only one trial, and the superseding indictment against Page was returned well before trial. Moreover, there is nothing in the record to suggest, as in *Jones*, that the government included the firearm count for any improper motive. On the contrary, Page's firearm was recovered in the same bedroom as the heroin charged in Count Five, and Page admitted after he was arrested that both the heroin and the gun were his. The gun count was not included, as in *Jones*, to strengthen weaker counts that the government had earlier been unable to prove; rather, they were included to reflect the full scope of Page's criminal conduct. Finally, there is no concern here with the question of "retroactive misjoinder," since there was no failure of proof connecting the gun count to the required nexus to interstate commerce.

We reject Page's contention that a felon-in-possession charge must *always* be severed from other charges. *Jones* does not stand for that proposition. Rather, we hold that where, as here, there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced, a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial. Nothing in this opinion should be taken to be a denunciation of the practice of bifurcating a felon-in-possession charge from other charges in a single multi-charge trial where doing so would better protect the defendant from prejudice than a limiting instruction, and the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice and bifurcating the trial of that charge would provide such protection.

### CONCLUSION

Because we conclude that the district court did not abuse its discretion in denying Page's motion to sever, we AFFIRM the conviction.