NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

No. 13-1819

_____

UNITED STATES OF AMERICA

v.

JAY GREGORY MATHIS,

Appellant

_____

On appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cv-00339-001)

District Judge: Honorable Gary L. Lancaster, C.J.

_____

Submitted Under Third Circuit LAR 34.1(a)
February 14, 2014

BEFORE: McKEE, *Chief Circuit Judge*, and CHAGARES and SHWARTZ, *Circuit Judges*

(Filed: June 4, 2014)

_____

OPINION

_____

McKee, *Chief Judge*

Jay Mathis appeals the District Court's judgment of sentence and conviction following his jury conviction and subsequent sentencing for charges arising from two robberies. He argues that the District Court erred in: denying his suppression motion, instructing the jury, refusing more extensive discovery, limiting his cross-examination of a Government witness, and denying his severance motion. He also challenges the constitutionality of 18 U.S.C. § 922(g)(1), one of the statutes he was convicted of violating. For the reasons that follow, we will affirm.

## I.

As we write only for the parties who are familiar with the facts and procedural history of this case, we need not reiterate them.

Mathis first argues that the District Court erred in denying his motion to suppress DNA evidence taken from a buccal swab. He focuses on the correctional facility's use of pepper spray to subdue him to obtain the swab and claims that constituted excessive force requiring suppression of the "fruit" of the seizure. We review findings of fact for clear error, but we exercise plenary review over legal determinations. *United States v. Benoit*, 730 F.3d 280, 283 n.5 (3d Cir. 2013) (citation omitted).

Although prisoners do not forfeit all of their constitutional rights, *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), courts have recognized that the legitimate concerns of a correctional institution limit the extent to which a prisoner retains his/her Fourth Amendment protections. *Padgett v. Donald*, 401 F.3d 1273, 1278-79 (11th Cir. 2005).

Thus, we assess the constitutional reasonableness of a search or seizure of a prisoner, in the context of the prison environment.

In assessing the constitutionality of Mathis's Fourth Amendment claim, we are struck by the extent to which his allegations are inconsistent with the record, including testimony of Mathis's own witness. The record reveals that the correctional facility's use of force was in response to Mathis's refusal to comply with the correctional facility's order to report to the medical facility. When Mathis was pepper sprayed and pulled down, the FBI agents responsible for the DNA sample were in a separate room. There is no other evidence on this record to support his claim of excessive force. Deputy Johnson, Mathis' own witness, stated that Mathis's cheeks were not even pinched while obtaining the second or third DNA samples.[1]

Nor is there any evidence of coordination between the FBI agents and the correctional facility that would support an inference of some agreement or agency relationship. All the evidence establishes that any communication with the prosecutor was merely to ensure the validity of the search warrant.[2]

**II.**

---

[1] Moreover, the exclusionary rule does not automatically apply to evidence seized following the application of excessive force. *United States v. Ramirez*, 523 U.S. 65, 71-72 & n.3 (1998).

[2] Mathis's argument that he was entitled to consult with counsel before law enforcement executed the search warrant for his DNA fails as his Sixth Amendment right to counsel had not yet attached and hence does not provide a basis to suppress his DNA evidence. *See Texas v. Cobb*, 532 U.S. 162, 172-73 (2001); *Maine v. Moulton*, 474 U.S. 159, 180 (1985).

Mathis next challenges the District Court's jury instruction for attempted bank robbery. According to Mathis, an attempted bank robbery under 18 U.S.C. § 2113(a) necessarily excludes the possibility of a "taking away" or flight. According to Mathis, the court should have instructed the jury not to consider evidence of the shooting during his flight as evidence that there was an attempted bank robbery.[3] It is unclear whether Mathis claims that the District Court made an error of law or merely an error as to the wording of the jury instructions. In any event, our review of the District Court's interpretation of the elements of this offense is plenary, *United States v. Urban*, 140 F.3d 229, 231-32 (3d Cir. 1998). We review the wording of the charge for an abuse of discretion. *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir. 1987). Under either standard, Mathis' claim will fail.

A District Court has broad discretion in fashioning a jury charge as long as it communicates the "substance of the law" so that the jury is not misled or confused. *United States v. Petersen*, 622 F.3d 196, 203 (3d Cir. 2010). As long as the jury instructions "fairly and adequately submit[] the issues in the case to the jury," the District Court's language will be upheld. *United States v. Hart*, 273 F.3d 363, 373 (3d Cir. 2001).

---

[3] The instruction that Mathis sought to add reads as follows:

"I instruct you that the evidence of the shooting during the flight of the actor from the bank may **NOT** be considered by you as evidence that there was an attempted bank robbery or attempted armed bank robbery, as charged in Counts One and Two, as those offenses have been defined for you above. In other words, you must first determine whether there has, beyond a reasonable doubt, been an attempted bank robbery, or a attempted armed bank robbery, before considering the evidence of the shootings following the actor's exit from the bank. This is because the conduct of the actor **after** the attempted crime has been committed, is not evidence of either the actor's intent to commit the crime charged, nor of a substantial step toward commission of the crime."

4

Here, the District Court told the jurors that Mathis could not be convicted of attempted bank robbery unless the evidence proved beyond a reasonable doubt that: (1) Mathis intended to commit the crime of bank robbery and (2) he took a substantial step toward the commission of the crime. The District Court's language tracks almost verbatim the Third Circuit's Model Jury Instructions for both attempted bank robbery and bank robbery. See THIRD CIRCUIT MODEL JURY INSTRUCTIONS at §§ 7.01, 6.18.2113A, 6.18.2113D. There is nothing to suggest that the jury could find that Mathis committed the subsequent act without first finding that he actually intended to commit the initial crime. Although there is at least some reference to use of a firearm when instructing the jury about attempted armed robbery, the court explicitly limited that use to occurrences *in* the bank. Moreover, despite Mathis's argument to the contrary, the evidence supports a finding that Mathis's subsequent flight was part of the bank robbery. *See United States v. Williams*, 344 F.3d 365 (3d Cir. 2003).

**III**.

Next, Mathis argues that the District Court improperly restricted his right to potentially exculpatory materials in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* claims present mixed questions of law and fact. We conduct a de novo review of the District Court's conclusions of law, and a clearly erroneous review of findings of fact. *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).

Mathis claims that the government committed a *Brady* violation when it failed to provide him with a complete copy of Lewis's FBI debriefing with law enforcement

5

as well as a complete copy of her Pre-Trial Services files. Although the District Court reviewed the supposedly exculpatory material, Mathis argues that the review was incomplete because the District Court did not review all of it.

In order to establish a *Brady* violation, "it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Risha*, 445 F.3d at 303. Here, Mathis has not established materiality under the third prong.

"Evidence is 'material' if there is a reasonable probability that . . . the suppression of the evidence 'undermined confidence in [the\ outcome of the trial.'" *Risha*, 445 F.3d at 303 n.5 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995)). Determination of a reasonable probability "requires consideration of the totality of the circumstances, including possible effects of non-disclosure on the defense's trial preparation." *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir. 1991). "Evidence that tends to impeach prosecution witnesses may be material under this standard." *Slutzker v. Johnson*, 393 F.3d 373, 387 (3d Cir. 2004). This is tempered, however, by the consideration that, "[s]uppressed impeachment evidence is immaterial under *Brady* . . . if the evidence is cumulative or impeaches on a collateral issue. Suppressed impeachment evidence, if cumulative of similar impeachment evidence used at trial . . . is superfluous and therefore has little, if any, probative value." *Conley v. United States*, 415 F.3d 183, 189 (1st Cir. 2005).

Mathis' primary reason for seeking these additional reports was to (1) show Lewis' cooperation with the government and the bias that could result and (2) "know what her criminal involvement in her own life was like . . . .".[4] The District Court was well within its discretion in limiting Mathis's discovery of otherwise privileged materials. *See* 18 U.S.C. § 3153 ("information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential"). Moreover, any additional evidence Mathis may have reeled in would have been cumulative, and thus not material. *United States v. Milan*, 304 F.3d 273, 288 (3d Cir. 2002).

The government disclosed a wealth of information about Lewis, including her identity, her plea agreement, her criminal history, her indictment and superseding indictment, and a redacted FBI FORM 302. Moreover, Mathis exploited these materials in cross-examination occupying nearly thirty-six pages of the trial transcript. *See Milan*, 304 F.3d at 288.

Furthermore, the District Court specifically instructed the jury to "consider the testimony of Bridgette Lewis with great care and caution," noting that in evaluating credibility, the jury may consider "whether or not her testimony may have been influenced by the plea agreement. . . ."

---

[4] We have no idea what Mathis means by this, or why such evidence, if it existed, would be *Brady* material.

Mathis also claims that the District Court erred in "unfairly restricting" his ability to cross-examine Lewis. We again disagree. "[T]he scope of cross-examination is left to the sound discretion of the trial court, and [we] will reverse only for an abuse of discretion." *United States v. Irizarry*, 341 F.3d 273, 306 (3d Cir. 2003). Mathis was not denied any particular theory of impeachment with respect to Lewis. *See Walker*, 657 F.3d at 188. Indeed, as noted above, Mathis was able to extensively cross examine her in hopes of impeaching her credibility. The court did not "cut[] off all inquiry into 'an event . . . that a jury might reasonably have found furnished the witness with a motive for favoring the prosecution in his testimony.'" *United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003). In addition, defense counsel appropriately tried to exploit evidence of numerous incidents of Lewis' "deceptive" behavior, and counsel exploited the potential bias that could be associated with being a government "snitch."

**IV.**

Mathis also contends that the District Court erred in denying his motion to sever in both trials. We review a District Court's denial of a motion to sever for an abuse of discretion. *Hart*, 273 F.3d at 369.

FED. R. CRIM. P. 8(a) permits courts to "charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The joinder is subject to the limitations contained in FED. R. CRIM. P. 14(a). Mathis argues that because none of the other charged offenses required the existence of a prior felony

8

conviction, the jury could "potentially consider it in relation to the charges for which prior felony had no relevance."

However, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Urban*, 404 F.3d at 775-76. Rather, Mathis must show that "substantial prejudice result[ed] in a manifestly unfair trial if the issues are heard together." *Id.* at 775. He has failed to make such a showing.

Mathis' argument overlooks the well-established principle that any potential prejudice from the joinder of multiple counts can be minimized by instructing the jury that each count charged is a separate offense and thus should be considered independently. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). We presume that jurors follow such instructions. *Zafiro*, 506 U.S. at 540.

The District Court appropriately told the jury to "separately consider the evidence that relates to each offense and return a separate verdict for each offense[.]" It also admonished the jury that their decision as to "one offense . . . should not influence [their] decision on the other offenses," and the court told them not to "speculate as to the nature of [Mathis' previous]conviction." Thus, the jurors knew that evidence of other crimes must not be used as "proof of a crime charged in this case." *See generally United States v. Page*, 657 F.3d 126, 131 (2d Cir. 2011). Virtually the same instructions were given in the second trial.

Moreover, assuming *arguendo* that the District Court abused its discretion in denying the severance motion, Mathis has not shown that he was prejudiced. "[The]

9

defendant must pinpoint clear and substantial prejudice resulting in an unfair trial."

*United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010).

## V.

Finally, Mathis challenges the constitutionality of 18 U.S.C. 922 § (g)(1). He argues in essence that the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), *Jones v. United States*, 529 U.S. 848 (2000), and *United States v. Morrison*, 529 U.S. 598 (2000) support the proposition that Congress exceeded its constitutional authority under the Commerce Clause in enacting § 922(g)(1). This argument is without merit. *See United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001), and *United States v. Shambry*, 392 F.3d 631 (3d Cir. 2004).[5]

## VI.

For the reasons we have explained, we will affirm the judgment of sentence of the District Court.

---

[5] Mathis concedes that this argument is contrary to binding precedents of this court.