21-1684-cr (Con)
*United States v. Polanco*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.   CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

        **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26ᵗʰ day of January, two thousand twenty-three.**

PRESENT:
              ROBERT D. SACK,
              JOSEPH F. BIANCO,
              EUNICE C. LEE,
                     *Circuit Judges*.

---

United States of America,

                     *Appellee*,

              v.                                                            21-1684-cr(CON)

Joshua Kemp, Rene Ruiz, AKA Lil' Rene, AKA Nae Nae, Wilfredo Gonzalez, AKA Alfredo Gonzalez, AKA Freddy, Domingo Ramos, AKA Mingo, Amar Ahmed, AKA Omar, Zaie Escribano, AKA Zaieto, Carlos Osorio-Perez, Jaime Gonzalez, AKA Jimbo, Jordan Mcdonald, AKA Umi, Edward Nelson, AKA Boo, AKA Bugatti, Christopher Correa, AKA Chris, Mark Fernandez, AKA Mark, William Russell, AKA Billy, Dennis Pomales,

                     *Defendants*,

Jason Polanco, AKA Jin,

*Defendant-Appellant.**

FOR APPELLEE:

DANIELLE R. SASSOON, Assistant United States Attorney (Celia V. Cohen, Won S. Shin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:

ROBERT J. BOYLE, Attorney at Law, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Jason Polanco appeals from an amended judgment of conviction, entered on July 7, 2021, in connection with an alleged drug distribution conspiracy operating on Decatur Avenue in the Bronx, New York, and acts of violence allegedly committed by Polanco and other members of this drug crew, including the murder of Shawn Ross in 2014 and a series of armed robberies of commercial businesses in Manhattan and the Bronx.

Following a jury trial, Polanco was found guilty of: (1) conspiracy to distribute one kilogram or more of heroin and a quantity of marijuana, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) (Count One); (2) using a firearm to commit murder in relation to the narcotics conspiracy, in violation of 18 U.S.C. § 924(j) (Count Two); (3) murder while engaged in the narcotics conspiracy, in violation of 21 U.S.C. § 848(e)(1)(A) (Count Three); (4) robbery conspiracy, in violation of 18 U.S.C. § 1951 (Count Four); (5) robbery, in violation of 18 U.S.C.

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

2

§ 1951 (Count Five); and (6) using, carrying and possessing firearms, which were brandished and discharged, during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Six). [1]  Polanco was sentenced principally to 510 months' imprisonment.

On appeal, Polanco argues that: (1) the evidence was insufficient to find him guilty of Counts One, Two and Three; (2) the district court abused its discretion in admitting certain out-of-court statements as co-conspirator statements and statements against penal interest; (3) the district court abused its discretion in admitting evidence of other shootings that occurred prior to Ross's murder; (4) the district court abused its discretion in declining to sever the robbery charges (Counts Four through Six) from the narcotics conspiracy and murder charges (Counts One through Three); and (5) the sentence of 510 months' imprisonment was substantively unreasonable. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.      Sufficiency of the Evidence

Polanco argues that the evidence at trial was insufficient to find him guilty of Counts One, Two, and Three of the indictment because the government failed to prove either that he was a member of a narcotics conspiracy to distribute heroin, or that he murdered Ross in furtherance of that conspiracy. Thus, Polanco contends that the district court erred in denying his motion for acquittal on these counts under Federal Rule of Criminal Procedure 29(c).

---

[1]   The numbering of the counts corresponds to those used in the trial indictment.

We review a challenge to the sufficiency of the evidence *de novo*.  *See United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022).  However, a defendant who makes such a challenge "bears a heavy burden, as the standard of review is exceedingly deferential."  *United States v. Gahagen*, 44 F.4th 99, 108 (2d Cir. 2022) (internal quotation marks and citation omitted).  In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict."  *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021).  We must affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022) (internal quotation marks and citation omitted).  "The same standards apply to the district court's consideration of an insufficiency argument in a motion under Fed. R. Crim. P. 29 for acquittal."  *United States v. Hamilton*, 334 F.3d 170, 179–80 (2d Cir. 2003).

As set forth below, we find Polanco's challenge to the sufficiency of the evidence on Counts One, Two and Three to be without merit.  We examine each of Polanco's challenges in turn.

### A.  Count One:   Narcotics Conspiracy Charge

Polanco argues that the evidence was insufficient to find him guilty on Count One for participating in a narcotics conspiracy to distribute one kilogram or more of heroin.  In particular, although Polanco does not dispute the sufficiency of the evidence regarding his participation in marijuana sales on Decatur Avenue, he contends that there was insufficient evidence to link that activity to the heroin business operated by Rene Ruiz and Wilfredo Gonzalez on the same block, such that Polanco could be held to be a member of the heroin conspiracy.  We disagree.

4

A defendant is guilty of a conspiracy if he "knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008). To be guilty of participating in a narcotics conspiracy, "a defendant need not be actively engaged in the distribution of drugs." *United States v. Santos*, 541 F.3d 63, 68 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also Ocasio v. United States*, 578 U.S. 282, 288 (2016) ("[A] specific intent to distribute drugs oneself is not required to secure a conviction for participating in a drug-trafficking conspiracy." (internal quotation marks and citation omitted)). Instead, a defendant may participate in a narcotics conspiracy by "performing ancillary functions such as . . . enforcing discipline [and] chastising rivals," *Santos*, 541 F.3d at 72 (alteration in original) (internal quotation marks and citation omitted), or using "violence to secure the organization's drug turf," *United States v. Estrada*, 320 F.3d 173, 183 (2d Cir. 2003) (internal quotation marks and citation omitted). The evidence necessary to link a defendant to the conspiracy "need not be overwhelming and may be circumstantial in nature." *United States v. Gaskin*, 364 F.3d 438, 460 (2d Cir. 2004).

Drawing all permissible inferences in the government's favor, we find that the evidence at trial established that Polanco knowingly participated in the heroin conspiracy charged in Count One, even in the absence of any evidence that he sold heroin. Specifically, the evidence at trial showed that, in 2014, Polanco sold marijuana on a block on Decatur Avenue in the Bronx (the "block") that was controlled by two heroin dealers: Gonzalez and Ruiz. Gonzalez and Ruiz controlled who could sell drugs on the block, including who could sell marijuana, and defended their territory from other drug dealers. Polanco sold marijuana primarily in front of Decatur Deli, alongside drug dealers who sold heroin for Gonzalez and Ruiz. The evidence also established

5

that Polanco and other dealers selling heroin on the block assisted one another in various ways, including by referring customers and alerting each other to the presence of law enforcement by yelling the code word "snag." For instance, one heroin dealer who operated on the block referred marijuana customers to Polanco, while another dealer who sold heroin for Gonzalez and used violence to protect the block helped Polanco sell marijuana. Additionally, as a marijuana seller on the block, Polanco received Gonzalez's protection: on one occasion, Gonzalez helped Polanco banish a rival marijuana dealer who had attempted to make sales out of Decatur Deli. As held by the district court, taken together, this collective evidence was sufficient to permit the jury to conclude that Polanco was embedded in an "integrated and singular conspiracy" run by Gonzalez and Ruiz, in which "the sales of the two types of narcotics [marijuana and heroin] were symbiotic." App'x at 101.

Moreover, a jury could rationally find that, as part of that symbiotic relationship, Polanco was an enforcer for the heroin conspiracy and advanced the objectives of that conspiracy by murdering Ross, a member of a rival drug crew (the "Gatta Crew"), following a series of violent disputes over drug territory between that crew and Gonzalez's and Ruiz's crew.[2] *See Santos*, 541 F.3d at 69 (explaining that, "although a murder committed by the defendant in furtherance of a drug conspiracy cannot itself satisfy the drug-offense element of section 848(e)(1)(A), it can, in appropriate circumstances, persuade the jury that the defendant was a member of the drug conspiracy in furtherance of which the killing was committed"). The government presented

---

[2] On appeal, Polanco does not argue that the evidence at trial was insufficient to establish that he committed the murder. He only argues that the evidence was insufficient to establish that the murder was committed in furtherance of a narcotics conspiracy, rather than as a result of a personal dispute.

6

evidence that Polanco murdered Ross at Gonzalez's direction and with a gun supplied by Gonzalez on the heels of two other shootings involving the Gatta Crew—Ruiz's shooting of the leader of the Gatta Crew and the Gatta Crew's subsequent shooting of Ruiz's drug manager. Indeed, there was evidence that the gun Gonzalez provided to Polanco for the murder was the same gun that Gonzalez kept to use in the event of another confrontation with the Gatta Crew. *See United States v. Aleskerova*, 300 F.3d 286, 293 (2d Cir. 2002) (finding that the conspiracy conviction was supported by evidence that the defendant "possessed items important to the conspiracy"). In short, on this trial record, we agree with the district court's conclusion that a rational jury could conclude that Polanco's murder of Ross "was at once an act of affirmative participation in the narcotics conspiracy headed by [Gonzalez] and [Ruiz] that included a heroin distribution object, and confirmation of Polanco's membership in that conspiracy." App'x at 101–02; *see Santos*, 541 F.3d at 73 ("That [the defendant] did not participate in the narcotics conspiracy in some way other than carrying out the murders does not undermine the sufficiency of the evidence that he was a co-conspirator.").

Accordingly, the district court did not err in denying Polanco's motion for acquittal on the narcotics conspiracy charged in Count One.

### B. Counts Two and Three: Murder Charges under 18 U.S.C. § 924(j) and 21 U.S.C. § 848(e)(1)(A)

Polanco also argues that there was insufficient evidence to support his convictions on Counts Two and Three in connection with Ross's murder. He asserts that the murder was not related to the charged narcotics conspiracy, as required under 18 U.S.C. § 924(j) and 21 U.S.C. § 848(e)(1)(A), but resulted from a personal dispute, and that it was not reasonably foreseeable to

7

him that the charged conspiracy involved more than one kilogram of heroin, as required under 21 U.S.C. § 841(b)(1)(A).

Section 924(j) authorizes the death penalty or life imprisonment for murder "through the use of a firearm" committed "in the course of" a violation of 18 U.S.C. § 924(c). 18 U.S.C. § 924(j). Section 924(c), in turn, proscribes the use or possession of a firearm "in relation to any crime of violence or drug trafficking crime." *Id.* § 924(c)(1)(A). Accordingly, to convict a defendant under Section 924(j), the government must prove that he used or carried a firearm in relation to a drug trafficking offense and used that firearm to murder the victim. *See United States v. Capers*, 20 F.4th 105, 115 (2d Cir. 2021); *United States v. Wallace*, 447 F.3d 184, 187 (2d Cir. 2006). Similarly, a conviction under Section 848(e)(1)(A) requires "a meaningful connection between the killing and the drug offense." *Santos*, 541 F.3d at 69. To establish that connection, "the government need only prove beyond a reasonable doubt that *one* motive for the killing . . . was related to the drug conspiracy." *United States v. Desinor*, 525 F.3d 193, 202 (2d Cir. 2008) (emphasis in original). "The government has no burden to establish that a drug-related motive was the sole purpose, the primary purpose, or even that it was equally as important as any non-drug-related purpose, as long as it was one purpose." *Id.*

As discussed above, the government introduced evidence to establish that Polanco murdered Ross at Gonzalez's direction because of the ongoing drug rivalry between Gonzalez's and Ruiz's crew and the Gatta Crew, of which Ross was a member. Based on that evidence, the jury could rationally infer that at least one motive for Ross's murder was connected to the narcotics conspiracy, even if Polanco also had a personal dispute with Ross. *See, e.g.*, *United States v. Nina*, 734 F. App'x 27, 31–32 (2d Cir. 2018) (summary order) (affirming Section 924(j) and

8

Section 848(e)(1)(A) convictions where "a months-long territorial dispute" between rival drug crews suggested that "the motive for the shooting was at least partially a Crew conflict, not merely a personal conflict"); *Capers*, 20 F.4th at 115 (affirming a Section 924(j) conviction where the murder "was motivated by an effort to preserve the [defendant's crew's] reputation and its ability to protect and extend its drug-dealing territory").

There was also sufficient evidence presented at trial for a rational juror to find that Polanco knew the charged conspiracy involved one kilogram or more of heroin, as required under Section 848(e)(1)(A). An enhanced penalty under Section 841(b)(1)(A) requires proof that "it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged." *Santos*, 541 F.3d at 70–71. Here, the trial evidence established that the narcotics conspiracy involved at least one kilogram of heroin because Gonzalez distributed well over that amount in a single year. Based on that evidence—together with the evidence establishing that Polanco sold drugs on the block next to drug dealers who sold heroin for Gonzalez and Ruiz, and that some of the heroin dealers referred Polanco customers—the jury could rationally find that Polanco was aware of the large quantities of heroin being distributed. We see no reason to disturb the jury's findings based on these permissible inferences. *See United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) ("[T]he task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court.").

In sum, the evidence was sufficient to support Polanco's conviction on Counts Two and Three, and the district court did not err in denying his motion for acquittal on those counts.

## II.     Evidentiary Rulings

Next, Polanco argues that the district court erred in admitting (1) Gonzalez's and Ruiz's out-of-court statements, and (2) evidence of shootings that occurred between Gonzalez's and Ruiz's crew and the Gatta Crew prior to Ross's murder.

We review a district court's decision to admit or exclude evidence for abuse of discretion, and we will reverse such a ruling only when it is "manifestly erroneous" or "arbitrary and irrational." *United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021) (internal quotation marks and citation omitted).    Even when a district court's evidentiary ruling is manifestly erroneous, we will not grant a new trial if the error was harmless.    *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012).

As explained below, we find Polanco's evidentiary challenges to be without merit.

### A.  Admission of Gonzalez's and Ruiz's Out-of-Court Statements

Polanco argues that the district court abused its discretion in admitting Gonzalez's and Ruiz's out-of-court statements as co-conspirator statements and statements against penal interest. Specifically, Polanco challenges the district court's admission of Gonzalez's statements to cooperating witnesses Christopher Correa and Joshua Kemp about Polanco's role in Ross's murder.    Correa, who sold heroin for Gonzalez, testified that after Polanco's confrontation with Ross, Gonzalez encouraged Polanco to "[h]andle it" and "[d]o what you got to do."    Tr. 169. Kemp, who also sold heroin for Gonzalez, similarly testified that Gonzalez told Polanco that "if [he] feel[s] some type of way" about Ross's behavior, "then [he] can do something about it."    Tr. 407.    Kemp further testified that Gonzalez gave Polanco a gun to use in the murder.    Finally, Polanco challenges the admission of Ruiz's statements to Correa and Joseph Thristino, another

cooperating witness, in which Ruiz admitted that he shot the leader of the Gatta Crew, James Brown, also known as Gatta, and that the Gatta Crew retaliated by killing Ruiz's drug manager.

Under Rule 801(d)(2)(E), a statement is "not hearsay" if the statement is "offered against an opposing party" and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Accordingly, a district court may admit a statement under this rule if it finds, by a preponderance of the evidence, "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014) (internal quotation marks and citation omitted). Statements between co-conspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy" are in furtherance of the conspiracy. *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991) (internal quotation marks and citation omitted).

We find no abuse of discretion in the district court's decision to admit out-of-court statements by Gonzalez to cooperating witnesses Correa and Kemp, and by Ruiz to cooperating witness Joseph Thristino, as co-conspirator statements under Rule 801(d)(2)(E). [3] For substantially the same reasons we discussed in connection with the sufficiency of the evidence challenges, there was sufficient evidence to demonstrate that Gonzalez and Ruiz, who controlled drug sales on the block, and Polanco, who sold marijuana on the block, were all involved in the

---

[3] Because we conclude that these statements were admissible under Rule 801(d)(2)(E), we do not address the district court's alternative ruling that such statements also were admissible as statements against penal interest under Rule 804(b)(3).

same narcotics conspiracy.  Similarly, there was ample evidence to establish that Correa, Kemp, and Thristino, each of whom sold heroin for Gonzalez and Ruiz, were part of the same conspiracy. Nor did the district court err in finding that Gonzalez's statements about Ross's murder, both during and after the fact, were in furtherance of the conspiracy because they served to update co-conspirators about the status of the conspiracy and alert them "about the risk of violence from a turf war" and the need to "defend[] the narcotics conspiracy's territory."  App'x at 75; *see*, *e.g.*, *United States v. Diaz*, 176 F.3d 52, 85 (2d Cir. 1999) (finding that statements that "attempted to apprise [the listener] of the progress or status of the conspiracy, to facilitate and encourage his assistance, and to foster the cohesiveness of the conspiracy" were in furtherance of the conspiracy). Similarly, Ruiz's statements to Correa and Thristino about shootings between their crew and the rival Gatta Crew were in furtherance of the conspiracy because they served the same purpose— alerting his co-conspirators about a series of violent disputes that occurred on their drug territory.

Furthermore, the district court acted within its discretion in finding that Ruiz's out-of-court statement to Correa about Ruiz's shooting of Gatta was admissible as a statement against penal interest.  Under Rule 804(b)(3), a district court may admit a statement against a declarant's penal interest if that declarant is unavailable as a witness.  Fed. R. Evid. 804(b)(3).  To admit a statement under this rule, a district court must determine that "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest," and that the statement is supported by "corroborating circumstances" that clearly indicate its trustworthiness.  *Gupta*, 747 F.3d at 127 (internal quotation marks and citations omitted); *see also* Fed. R. Evid. 804(b)(3).  Here, Ruiz's admission to Correa about his attempted murder of Gatta was clearly admissible under Rule 804(b)(3) because the statement was detrimental to his

12

penal interest and supported by the fact that he later pled guilty to the attempted murder charge.

Accordingly, there was no abuse of discretion in the district court's admission of Gonzalez's and Ruiz's out-of-court statements.

### B. Admission of Evidence Regarding Other Shootings

Polanco also challenges the district court's admission of testimony regarding two acts of violence that occurred between Gonzalez's and Ruiz's crew and the Gatta Crew shortly before Ross's murder—Ruiz's shooting of Gatta and the Gatta Crew's subsequent shooting of Ruiz's drug manager.

Although "[e]vidence of any other crime, wrong, or act" cannot be used to show a person's bad character, it is admissible to prove, among other things, motive, opportunity, intent, or knowledge.   Fed. R. Evid. 404(b)(1), (2).   Thus, "such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402."   *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (internal citation omitted).   Moreover, evidence of other crimes or acts can be admitted without reference to Rule 404(b) if that conduct "arose out of the same transaction or series of transactions as the charged offense," "is inextricably intertwined with the evidence regarding the charged offense," or "is necessary to complete the story of the crime on trial."   *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (internal quotation marks and citation omitted).   "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."   *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994).   Any evidence admitted for these additional purposes must likewise survive the Rule 403 weighing of its probative value against the danger of unfair prejudice.   *See*

*Robinson*, 702 F.3d at 37 & n.15.

We find no abuse of discretion in the district court's decision to admit evidence of the shootings that preceded Ross's murder. The evidence of violent disputes involving the Gatta Crew was admissible to provide the necessary context for the charged crimes. More specifically, the evidence showed that the murder was not an isolated incident, but the culmination of a turf war between Gonzalez's and Ruiz's crew and the Gatta Crew, and suggested that Polanco shot Ross, a member of the Gatta Crew, to protect the block where he sold marijuana from further interference by that crew. Thus, that evidence was "inextricably intertwined with the evidence regarding the charged offense," and "necessary to complete the story of the crime on trial." *Robinson*, 702 F.3d at 37 (internal quotation marks and citation omitted). Furthermore, the evidence of the shootings was probative of the existence of the narcotics conspiracy because it showed that the co-conspirators defended the reputation and territory of their drug operation against drug rivals through violence, thus enabling that operation to continue. *See*, *e.g.*, *Santos*, 541 F.3d at 69 ("[A]cts—including killings—may and often do serve as powerful circumstantial evidence that the charged conspiracy existed and that the actor joined it."); *Estrada*, 320 F.3d at 183 (stating that "the use of violence to secure the organization's drug turf" can be considered an overt act by participants in a narcotics conspiracy).

Additionally, the district court conducted the requisite balancing under Rule 403 and properly concluded that any unfair prejudice from this evidence did not substantially outweigh its probative value because Polanco did not participate in the prior shootings, and the evidence was therefore unlikely to inflame the jury against him. The district court noted that "the preceding shootings will not be more sensational or disturbing than the evidence the jury will already

14

unavoidably hear" regarding Polanco's murder of Ross, whom Polanco shot ten times in the middle of the block in front of a bodega.    App'x at 63.    The district court also minimized any potential prejudice arising from the admission of this evidence by proposing a limiting jury instruction explaining that the earlier shootings would be introduced solely to provide context for the charges in this case and explain the circumstances under which Ross's murder occurred.

Accordingly, the district court did not abuse its discretion in admitting evidence of the shootings that preceded Ross's murder.

### III.    Severance

Polanco contends that the district court erred in denying his pre-trial motion to sever the narcotics conspiracy and murder counts from the robbery counts under Federal Rules of Criminal Procedure 8(a) and 14.    He also challenges the denial of his post-trial motion for a new trial based on prejudicial retroactive misjoinder.    We find these challenges to be without merit.

Under Rule 8(a), counts may be joined in the same indictment when they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."    Fed. R. Crim. P. 8(a).    "Joinder is proper where the same evidence may be used to prove each count, or if the counts have a sufficient logical connection." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (internal quotation marks and citations omitted).    We review a challenge to the district court's joinder of counts under Rule 8(a) *de novo* and "conduct a twofold inquiry:    whether joinder of the counts was proper, and if not, whether misjoinder was prejudicial to the defendant."    *United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012) (internal quotation marks and citation omitted).

15

Even if joinder is proper under Rule 8(a), the district court retains discretion under Rule 14(a) to sever the counts and order separate trials to prevent prejudice to the defendant. Fed. R. Crim. P. 14(a); *see Page*, 657 F.3d at 129. To establish that severance is warranted under Rule 14(a), "the defendant must show not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (emphasis in original) (internal quotation marks and citation omitted). Because Rules 8 and 14 were "designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice" to the defendant, "less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder." *Page*, 657 F.3d at 129 (alteration adopted) (internal quotation marks and citation omitted). Accordingly, we review a denial of a motion to sever counts under Rule 14 for abuse of discretion. *Id.*; *Sampson*, 385 F.3d at 190.

We find no Rule 8(a) error in the district court's denial of Polanco's pre-trial severance motion because the narcotics conspiracy and murder counts shared a sufficient evidentiary connection with the robbery counts and reflected the continuation of criminal conduct by a common group of co-conspirators. Specifically, the evidence at trial established that Polanco committed the robberies together with Gonzalez, Kemp, Thristino, and other individuals who participated in the narcotics conspiracy and sold drugs on the block for Gonzalez and Ruiz. The government also introduced evidence suggesting that Polanco committed the robberies with these co-conspirators to raise additional money because drug sales on the block had declined following the shootings involving the Gatta Crew. The evidence regarding the disruption of drug trade on the block helped explain why Polanco and his co-conspirators turned to robberies to get money,

16

while the evidence of their preexisting criminal relationship provided important context for the robberies. Additionally, the testimony of several government witnesses, including Kemp and Thristino, was necessary to prove the narcotics conspiracy, murder, and robbery counts. For these reasons, we agree with the district court's conclusion the counts shared significant "factual and evidentiary overlap," and thus trying them together would be proper under Rule 8(a). App'x at 55.

Additionally, the district court did not abuse its discretion in concluding that joinder was proper because Polanco failed to show that it caused him substantial prejudice as required under Rule 14. Polanco argues that he was prejudiced because evidence of the armed robberies influenced the jury's decision on the narcotics conspiracy and murder counts—namely, it encouraged the jury to make an impermissible inference that he was a violent individual with criminal propensity to commit murder. However, as the district court observed, even though the narcotics conspiracy and murder charges were the most serious offenses in the indictment, they were "not of such wildly disparate character [as compared to the armed robbery charges] as to warrant a finding of substantial prejudice." *Id.* Furthermore, even if the counts had been severed, evidence of the robberies would have been relevant and admissible in a trial on the narcotics and murder charges because the fact that Polanco committed robberies with the same individuals who were also involved in the narcotics conspiracy was proof of their criminal relationship and provided important context for the murder charges. For example, during the period that Kemp and Polanco were committing robberies together, Polanco confessed to Kemp that he murdered Ross. Their shared history of criminal activity would have provided context for the jury to understand why Polanco trusted Kemp and confided in him. In addition, the district

17

court minimized any potential prejudice to Polanco that might arise from the joinder by directing the jury to consider his guilt as to each count separately and return a separate verdict as to each count. The district court also instructed the jurors that they may not consider the evidence of Polanco's prior robbery "conviction as evidence of [his] propensity to commit any crimes for which [he] is now on trial." Tr. at 550–51. Given that evidence of the robberies was admissible to prove the existence of a narcotics conspiracy, and the district court gave a limiting instruction to the jury to consider the counts separately, we find no abuse of discretion in the district court's denial of Polanco's motion to sever under Rule 14. *See Page*, 657 F.3d at 130–31 (finding that joinder of narcotics and gun counts was proper because there was a sufficient logical connection between the charges, they required much of the same evidence, and the district court minimized the danger of unfair prejudice by giving a limiting instruction to the jury).

Finally, Polanco argues that, even if joinder was initially proper, the district court should have granted a new trial on the ground of retroactive misjoinder because the evidence at trial failed to establish a link between the robberies and the narcotics conspiracy. Retroactive misjoinder "refers to circumstances in which the joinder of multiple counts was proper initially, but later developments," such as the "dismissal [or reversal] of some counts . . . render the initial joinder improper." *Hamilton*, 334 F.3d at 181 (internal quotation marks and citation omitted). "[T]o be entitled to a new trial on the ground of retroactive misjoinder, a defendant must show compelling prejudice." *Id.* at 181–82 (internal quotation marks and citations omitted). Here, as discussed above, Polanco's claim that the government ultimately failed to establish a link between the narcotics conspiracy and robbery counts is belied by the extensive evidence introduced at trial

18

that showed significant connection between these charges. Thus, we are similarly unpersuaded by Polanco's claim of retroactive misjoinder.

Accordingly, we find that the district court did not err in denying Polanco's motions to sever the narcotics-related and robbery counts.

## IV. Sentencing

Finally, Polanco argues that his sentence of 510 months' (or 42.5 years') imprisonment, which was below the United States Sentencing Guidelines advisory range of life imprisonment to be followed by a mandatory consecutive 15-year sentence, was substantively unreasonable. In particular, he contends that the district court abused its discretion by imposing an "unreasonabl[y] harsh" sentence, especially in light of the violence to which Polanco was subjected as a child. Appellant's Br. at 60.

We review the substantive reasonableness of the sentence imposed under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In doing so, "we will not substitute our own judgment for the district court's on the question of what is sufficient to meet the [18 U.S.C.] § 3553(a) considerations in any particular case." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "We will instead set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Id.* (emphasis omitted) (internal quotation marks and citation omitted). In other words, a sentence is substantively unreasonable only if it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). We have also noted that, under this standard,

19

it is particularly "difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (per curiam).

Here, we find no basis to conclude that Polanco's sentence was substantively unreasonable. The district court observed, given the nature of Polanco's crimes, which included a "heinous" murder committed in furtherance of "a violent gang's drug trafficking" conspiracy, App'x at 156, and several "horrific" robberies that "terrorized perhaps a couple of dozen innocent people," App'x at 159, that imposing a life sentence would be consistent with Section 3553(a)'s guidance that the punishment should fit the seriousness of the offense and promote respect for the law. *See* 18 U.S.C. § 3553(a)(1)–(2). However, the district court ultimately decided to impose a below-Guidelines sentence after considering Polanco's mitigating factors under Section 3553(a)(1) relating to Polanco's personal history and characteristics, including his difficult, abusive upbringing, his age at the time of the offenses, his letter to the district court in which he expressed remorse, as well as letters from his family members. *See id.* § 3553(a)(1). The district court also accounted for the fact that Polanco had already spent 15 months in harsh conditions of confinement because of the COVID-19 pandemic. After carefully weighing these and other Section 3553(a) considerations, the district court imposed a sentence of 42.5 years' imprisonment, reasoning that, although the mandatory minimum sentence of 35 years' imprisonment was "not long enough to reflect the gravity of [Polanco's] crimes," this sentence, rather than a life sentence, was sufficient to reflect all of the Section 3553(a) factors. App'x at 179. Given the factors identified by the district court and the record presented at sentencing, this below-Guidelines sentence was not "shockingly high," *Rigas*, 583 F.3d at 123, but rather was "within the range of

20

permissible decisions," *Cavera*, 550 F.3d at 189 (internal quotation marks and citation omitted).

Therefore, we find that the sentence was substantively reasonable.

*            *            *

We have considered Polanco's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court